[Crim. No. 3995. Second Dist., Div. Three. Feb. 21, 1946.]

HERBERT K. SORRELL, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondents.

Bodle, Pestana & Esterman and Maynard J. Omerberg for Petitioner.

Fred Howser, District Attorney, and Jere Sullivan and Robert G. Wheeler, Deputies District Attorney, for Respondents.

THE COURT.—Herbert K. Sorrell applied to this court on February 14, 1946, for a writ of habeas corpus to procure his release from confinement under a judgment which declared him guilty of nine charges of contempt of court, consisting of the violation of a restraining order issued by the Superior Court of Los Angeles County, and ordered that he serve a total of 16 days in the county jail and pay fines aggregating $1,700. It was alleged in the petition that the affidavits upon which the citation was issued and the commitment itself stated no facts from which it could be ascertained that any contempt had been committed and that there was no evidence at petitioner's trial that the restraining order had been served upon him or that he had any knowledge as to what acts were restrained. Upon the strength of these allegations of the verified petition, we issued a writ returnable on February 20. At the time of the hearing it developed that petitioner had not procured a transcript of the evidence taken upon the trial, which had been commenced December 18, 1945, and had been concluded by rendition of judgment on January 9, 1946. A continuance was re-

quested by petitioner until such time as the testimony at the trial could be transcribed and furnished to the court. No showing was made that a transcript had been ordered by petitioner or his counsel or that an arrangement had been made with the reporter for the payment of his fees. The motion for continuance was denied.

There was on file with this court a petition of Herbert K. Sorrell for a writ of review, by which he challenged the jurisdiction of the trial court in the contempt proceeding upon the same grounds as those urged for his release upon habeas corpus. The petition had been denied. It contained as exhibits a copy of the restraining order which was alleged to have been violated and copies of the verified application for an order to show cause *in re* contempt, some 20 affidavits charging violations of the restraining order by the petitioner and others upon nine different days between October 6 and October 17, 1945, an affidavit of the sheriff, by his deputy, showing service of the restraining order, summons, complaint, and affidavits attached thereto, order to show cause and points and authorities on petitioner Sorrell, and also stating that he, the deputy sheriff, had read the order to show cause over a loud speaker at several points upon plaintiff's premises in the presence of the pickets and persons assembled, announcing that he was a deputy sheriff. Also attached to the petition for a writ of review was a copy of the judgment containing a full recital of the facts found and imposing sentence. The affidavits included pictures that were taken of some of the crowds assembled at the studio entrances, marching in such numbers and in such close formation as to prevent persons passing to and from the studio. The affidavits described in detail numerous acts of intimidation, violence, and physical combat, as a result of which within a few days more than 100 persons, strikers and nonstrikers, were required to receive medical and surgical attention by reason of their injuries. It was shown that petitioner Sorrell marched in the picket lines, directed the activities of the pickets, and engaged in fist fights. On each of the days in question pickets were armed with deadly weapons, threw missiles, and engaged in riotous and uncontrollable conduct.

It was stipulated by the petitioner and the district attorney that the petition for writ of review, including exhibits and points and authorities, should be considered in evidence by this court in the habeas corpus proceeding as having been

offered in support of the allegations of the petition and as a traverse to the sheriff's return. The matter was argued, the evidence was duly considered, the court adjourned for deliberation, resumed the bench, and announced its decision orally substantially as hereinafter set out, and the same is hereby adopted as a part of this opinion.

By Justice Shinn: The labors of the court in this matter have been considerably facilitated by the study which we have heretofore given to the petition for a writ of review. We became familiar with the record which has been presented here in the consideration of that petition. It is now the desire of the court to make a ruling in the present proceeding and to express generally the reasons for the ruling, to be followed by a written opinion which may amplify the reasons which the court announces for the ruling. Merely as preliminary to a more extended statement, we feel it proper to make a brief general review of the situation which will be the foundation of the written opinion which is to follow. The questions presented for decision are quite simple.

The complaint of the plaintiff here, Warner Bros., was filed on the 6th of October, 1945, against Painters' Local No. 644 and certain other defendants, seeking injunctive relief against mass picketing, and certain acts which were specifically described in the complaint and which consisted of the use of force and threats against the plaintiff, its employees and its customers and which it was alleged, in effect, closed plaintiff's studio and business. On the same day an application was made for a restraining order and an order to show cause why an injunction should not be issued, based upon the verified complaint and certain affidavits filed therewith. A restraining order was issued and it restrained the conduct of the defendants in the following particulars: the number of pickets that were allowed to be stationed at various entrances to the studio ranged from two to four and they were required to be kept at least 10 feet apart and at certain distances from the studio entrances, and in comprehensive terms the defendants were restrained from all acts of threats, intimidation, violence, breaches of the peace and other conduct which would be calculated to prevent employees and customers of plaintiff from entering and leaving the place of business. On the 19th of October a verified application was made for a citation in contempt, supported by some 21 additional affidavits. The application was verified

by an officer of the plaintiff, one Obringer, and it alleged the assembling of a large number of pickets on the 5th day of October and the commission of acts of violence, breaches of the peace, the use of force, intimidation and fear upon the employees and customers of plaintiff, which if allowed to continue would have effectually closed plaintiff's business. It alleged the filing of the complaint and the issuance of the restraining order on the 6th of October; it alleged that the restraining order was read over a loud speaker by a deputy sheriff to the crowd of pickets that were assembled, and in the hearing and presence of the petitioner Sorrell, at the main entrance to the studio and at other points on the premises. It was alleged that defendant Sorrell was served by this deputy sheriff with the restraining order, although the allegations with reference to the reading and the service of the restraining order were on information and belief. It then alleged, ''That on the 6th day of October, 1945, the said defendants again formed or caused to be formed, and maintained or caused to be maintained, at, in front of, and across said main entrance of said studio a picket line of approximately 300 pickets, which picket line was in all respects the same or similar to that maintained by said defendants at, in front of and across said main entrance to said studio on October 5, 1945, as aforesaid.'' There was an additional allegation that subsequent to the service of the temporary restraining order upon the petitioner here and subsequent to the public announcement as aforesaid, the defendants, ''in disobedience and violation of said temporary restraining order maintained and continued to maintain the said picket line or lines, consisting of approximately 300 pickets, at, in front of and across the said main entrance to said studios in the same manner and in all respects the same or similar to the maintenance thereof on said 6th day of October, 1945, prior to the said service upon the said Herbert K. Sorrell of said temporary restraining order and the aforesaid public announcement of said temporary restraining order and the terms thereof.'' In the succeeding counts there were substantially the same allegations with reference to the assemblage and maintenance of picket lines on the several specified days. Each count was specific in its allegations of conduct which would clearly of itself, and without reference to conduct on other days, constitute a violation of the restraining order.

The order to show cause, or contempt citation, was served upon petitioner and a trial was had, as a result of which he was found guilty of nine charges of contempt of court committed between the 6th and the 17th days of October, 1945, inclusive, including charges of conduct constituting contempt on the 15th and 16th days of October. There were findings that on all these specific days, with the exception of the 15th and 16th, petitioner was personally present and participating in the picketing. There was also a finding that in the maintenance and the conduct of said strike and of said mass picket lines at the entrance of said studios, the said Herbert K. Sorrell was a leader, acting in concert with other leaders in the conduct of said strike and said picket line.

It is broadly contended by petitioner that the affidavits upon which the contempt citation was issued were insufficient to charge acts which were in violation of the restraining order or to advise him of the nature of the acts with which he was charged, and that the court was therefore without jurisdiction to proceed in the matter. The objection is that matters of substance cannot be alleged by reference to exhibits in an affidavit charging acts of constructive contempt and that therefore the allegations as to one so-called count cannot be aided by reference to allegations with respect to acts upon other occasions, set out in other so-called counts.

We shall not at this time discuss the purpose that is served by the affidavits upon which the court acts in issuing a contempt citation. The insufficiency of the allegations of the Obringer application which petitioner assumes, do not exist. Counsel for petitioner has stated that the court excluded all evidence as to what occurred on the 5th day of October, and he argues that there was therefore a failure of proof to sustain the allegations which described the acts of defendants as the same or similar to those committed on the 5th. The Obringer application was verified and it was evidence as to the acts charged to have been committed on that day. The additional affidavits, some 20 in number, were evidence of the petitioner's violation of the restraining order on the days to which they related, namely, the several working days, excluding the 15th and 16th, between October 6th and October 17th. As we have stated, the allegations as to the conduct of the defendants on each separate day were insufficient to charge violation of the restraining order without reference to the allegations as to conduct upon other days.

None of the claimed uncertainties were such as to create a doubt as to the acts with which petitioner was charged or to affect the jurisdiction of the court. It is also contended that there was no evidence whatever to justify the conviction of the petitioner of the charges which related to the 15th and 16th days of October; in other words, that there was no evidence before the court that would charge him with any responsibility for what took place on those days. There was no evidence that petitioner was in the picket line or that he was at the studio on the 15th or 16th, but there was evidence of massed picketing on those days and acts of violence similar to those committed upon other days. The findings of Judge Ashburn are criticized because they designated the conduct of the persons charged as a conspiracy, whereas no conspiracy was charged in the affidavits. But a conspiracy was charged in the affidavits. When a number of persons assemble with a common intent and purpose to accomplish a single definite objective, and when they act jointly and in concert for the purpose of accomplishing that objective and do things which are calculated to accomplish it—when you have proved those things you have produced complete evidence of a conspiracy. Paragraph III of the Obringer affidavit alleges that on the 5th day of October, 1945, the said defendants assembled or caused to be assembled near or in the vicinity of the studio 750 pickets for the purpose and with the intent of blocking off all entrances to and exits from said studio and all traffic of whatsoever nature in the vicinity of said studio and preventing the plaintiffs, its officers, employees, customers and any and all persons from entering or leaving said studio, and compelling the plaintiff to close said studio and cease all operations therein and thereof, etc. There were allegations of a common purpose and intent and there were allegations in each count of concerted action with the same purpose and intent. This petitioner joined in that movement and conspiracy and actively participated therein, and he could not evade responsibility by remaining absent for a couple of days. If there was evidence to sustain the findings as to petitioner's conduct on the days other than the 15th and 16th, there was evidence to sustain the findings as to his responsibility for the acts committed on those days.

It has not been contended that petitioner did not actively participate in the picketing. The court is familiar with the affidavits contained in the petition for a writ of review. It

is unnecessary to discuss them or to state the substance of them further than to say that there was an abundance of evidence that this petitioner was not only an active participant in this strike activity, but a leader in it, not because he had been granted any authority by the pickets themselves or otherwise, but because the men who were assembled there recognized and acted upon his leadership. The affidavits show that. It is entirely immaterial whether he was a member of the strategy committee or what his duties were or what those of the strategy committee were. The evidence, and the only evidence, is that he had a responsible leadership and that these strikers looked to him for directions. It was shown by the affidavits that Sorrell did not confine himself to merely supervisory activities, but that he actively engaged and participated in the fighting that took place between the strikers and nonstriking employees.

We now come to the question of service. It was stated in the petition for the writ that there was no evidence that petitioner had been served with the restraining order. It is contended that the affidavit of the officer who delivered the process to petitioner failed to state that he identified himself to petitioner or disclosed the fact that he was making service of process, and it is argued that mere delivery of the papers did not constitute valid service. It is also contended that there was no evidence that petitioner had knowledge of the terms of the order. The argument is without merit. When process, consisting of summons and complaint or a restraining order, is personally handed to and left with a defendant, valid service has been made. No doubt there are circumstances in which the act of service would be deceptive, perhaps intentionally so, but we have no such situation here. This petitioner was served as countless other people are served with process every day. It was found that he continued to march in the picket line on October 6th after he was served, but it is argued that he was not shown to have continued to do so after he had read the order. It was his duty to find out immediately whether he had been served with a restraining order. He was in an activity where he should have anticipated some court action to restrain him. The picketing had gone on for a long time without any trouble, but these pickets had no right to believe that when they assembled in such numbers and conducted themselves in such manner as to close the studio and the business of plaintiff

there would not be some court action taken against them. The nature of the activity was such that they should have been anticipating the service of process, and in addition to that, there was the fact that the restraining order was read by the deputy sheriff over the loud speaker, as appeared from his affidavit which was filed with the application for the contempt citation. The trial judge no doubt believed that the petitioner here heard the restraining order read before he was served.

The question here is not whether this man was served, nor whether he knew or did not know the nature of the restraining order that was served upon him, nor whether he committed these acts of contempt of court. As to all of these matters the question is whether there was substantial evidence or an absence of evidence upon the questions of fact that were decided by the trial judge. We have no doubt, however, as to the correctness of the findings as to the sufficiency of the service upon the petitioner and as to petitioner's knowledge of the contents of the restraining order and his participation in the several acts charged in disregard of the restraining order. There was an abundance of evidence upon all of these questions and we are of the opinion that there is not even a close question presented as to any of them.

The allegation of the petition for a writ of habeas corpus that the commitment does not nor do the affidavits of contempt upon which said commitment was based state any facts from which it can be ascertained that any contempt was committed is a false allegation. The allegation that at the hearing there was no evidence that said restraining order was served upon petitioner or that he had any knowledge as to what acts were restrained is a false allegation.

Desmond, P. J.: For the reasons stated by Mr. Justice Shinn, my colleague, Mr. Justice Wood, and I concur in the decision of the court at this time, and that is that the writ will be discharged and the petitioner remanded to the custody of the sheriff, and his bail exonerated.