THE COURT.
Defendants were convicted of trespass on property of the Bank of America. Six cases were consolidated for the trial and, with others, for this appeal.
*Supp. 931 The trespass was charged in two counts: entering land with intention to interfere with or obstruct a business (Pen. Code, § 602, subd. (j)); and, entering and occupying property without the owner’s consent (Pen. Code, § 602, subd. (?)). A third count in each case charged willful disobedience of a superior court order (Pen. Code, § 166.4) which restrained the defendants and others from—among other things—trespassing or mass picketing on or about the property of the Bank of America. Defendants were found guilty by a jury, and given consecutive sentences, on each count of the complaints.
Appellants contend, in brief, that the evidence does not support convictions under these trespass statutes; that any application here of these statutes deprives appellants of certain constitutional rights; that the convictions should be abated under the federal Civil Rights Act of 1964; that appellants had no timely knowledge of the contents of any court order; and, finally, that the sentences are contrary to the command of Penal Code section 654, and constitute multiple punishment.
The case is here on a settled statement of the facts, and with certain photographs and moving pictures which were exhibits at the trial. We have been asked to consider, and have considered, all of the record including these exhibits.
Por at least a week prior to their arrest defendants were known to officers of the Bank of America as persons involved with a larger group of people demonstrating in and about different business premises of the bank. The demonstrations were in various forms. Picket lines of eight to ten people— sometimes including defendants—walked around on public sidewalks fronting bank premises with signs protesting the bank’s employment policies regarding racial minorities, and exhorting the public not to do business with the bank. Some persons—including some defendants—entered bank premises, exchanged bills for coins of small denomination, and remained in front of tellers’ windows for as long as 30 minutes counting coins on the customer side of the counters. In some instances other customers were able to conduct their business with the tellers by reaching around the demonstrators.
The “demonstrations” for which defendants were convicted occurred during business hours on June 26, 1964, at the bank’s main office in San Diego (defendant Beard will be treated separately). A picket line was moving in front of the bank. Defendants and others grouped themselves in three *Supp. 932 of the six doorways into the bank. For about 15 or 20 minutes, except for some singing, they just stood there, until their arrest. There is no evaluation in the record of either the volume or quality of the singing. The settled statement is clear that “most of the time, the defendants and/or others standing in or near the doorways with them turned aside to permit ingress and egress for bank customers . . . .” (Italics added.) Films show that, at best, the customers bold enough to come on to face with the defendants, did squeeze through, with the defendants’ group reforming behind them. Both testimony and film placed all defendants on the bank’s property during this time. Defendants were served with the court’s restraining order on June 26—the same day—and this subject will be discussed separately.
Minutes before their arrest each defendant was advised by a bank official that—among other things—they were acting in violation of a temporary (restraining) order, and of the trespass law; defendants were requested to leave. Defendants did not change their positions and the arrests followed.
Defendant Beard was arrested earlier on the same afternoon at the bank’s 42d and El Cajon Boulevard branch after counting pennies at a teller’s window for about 30 minutes, and after being served with the court order.
We have fully examined the language of Penal Code section 602, subdivisions (j) and (l) in a substantially similar factual situation in People v. Brown, ante, p. 915 [47 Cal. Rptr. 662] (Case “A,” Crim. No. 7474), a companion to the instant ease on appeal—opinion filed this day. We concluded there that Penal Code section 602, subdivision (l) could not be applied to make mere occupancy without consent a criminal act, where the preceding entry was not also “without consent.” Whatever notice the defendants may have received through earlier service on them of a temporary restraining order (in a then pending civil suit hy the bank), they were not then advised that as to a simple, uncomplicated entry, the bank’s consent was by the order being withdrawn. The statute calls for more crime than is shown here.
Our reasoning in the companion ease (“A”) as to Penal Code section 602, subdivision (j) leads to the conclusion that the trial judge here was correct in instructing the jury that the word “lands” includes buildings and fixtures (instruction No. 36). There was ample evidence of defendants’ actions before, during and after their entry to justify the verdict of guilty on a charge that they entered on June 26th with the intention of interfering with or obstruct *Supp. 933 ing the lawful business of the bank. The trial judge was quite correct in his rulings on the admission of all this evidence.
We come now to the contentions of appellants that racial discrimination was or should have been an issue in the trial, and that their fundamental right of protest was abridged by their conviction. No support can be found for either argument.
Equal Pbotection
Appellants complain that the trial court excluded evidence offered to prove that the bank had in fact discriminated in its hiring practices. An affirmative finding on this issue, it is urged, would place these defendants within the Fourteenth Amendment’s protection against the enforcement of laws which discriminate against citizens on the basis of their color or race. For this application of constitutional intent appellants cite Lombard v. Louisiana, 373 U.S. 267 [83 S.Ct. 1122, 10 L.Ed.2d 338].
Initially we are faced with the problem that nothing in the record of this ease reveals any rulings on evidence or offered evidence of discrimination or, indeed, even the race or color of the defendants. The temptation, if not the precedent, is to deny appellants’ plea for any review of the constitutional argument. Since this case is in hand with others, however, and appellants in other related cases present slightly sturdier records on the question, it seems expedient here, if not necessary, to dispose of all their fears on their merit.
It has become clear that state enforcement of a non-discriminating trespass statute can be unconstitutional if that enforcement is coupled with the existence of a statute or ordinance which requires the separation of the races. (Peterson v. City of Greenville, 373 U.S. 244 [83 S.Ct. 1119, 10 L.Ed.2d 323]; Lombard v. Louisiana (1963) 373 U.S. 267 [83 S.Ct. 1122, 10 L.Ed.2d 338].) In 1964, however, the U.S. Supreme Court avoided the Fourteenth Amendment’s equal protection clause in reversing state convictions for criminal trespass where state impressed discrimination had disappeared from the statutes pending the appeal. (Bell v. Maryland, 378 U.S. 226 [84 S.Ct. 1814, 12 L.Ed.2d 822].) A respectable minority of the court had there argued that under the circumstances the state had frustrated the petitioners’ constitutional right to public accommodations in legitimating, by judicial action, a proprietor’s attempt at self-help. No U.S. Supreme Court decision has been discovered which *Supp. 934 places freedom from private discrimination in places of public accommodation, without state action, among the guarantees of the Fourteenth Amendment. In December of 1964 that court again acknowledged its failure to settle the question. (Hamm v. Rock Hill, 379 U.S. 306, 310 [85 S.Ct. 384, 13 L.Ed.2d 300 at p. 304]; Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241 [85 S.Ct. 348, 13 L.Ed.2d 258 at p. 264].) In the latter decision the court rested its approval of the Civil Eights Act of 1964 solely on the sufficiency of the commerce power. It specifically did not pass upon section 201 (d) or section 202 of that act, having to do with state action.
In the ease at bench, appellants point to no more “state action’’ than was found in Bell v. Maryland (supra). This court cannot do what the United States Supreme Court has not done. The equal protection clause of the Fourteenth Amendment is not available to these defendants even if the only crime in their conduct was generated by the bank’s private discrimination against their race, which is not the fact.
It must be noted that in all of the so-called “sit-in” cases involving the Fourteenth Amendment and criminal trespass before the U.S. Supreme Court, the crime was asserted only in the owners’ lack of consent to the simple presence of the defendants, or “because they were Negroes”. The only acts charged, i.e. sitting in, were innocent except for the (invalid) statute demanding segregation. As Justice Douglas wrote in Bell v. Maryland, 378 U.S. 226, 261 [84 S.Ct. 1814, at p. 1833, 12 L.Ed.2d 822, 878], “All the sit-in eases involve a contest in a criminal trial between Negroes who sought service and state prosecutors and state judges who enforced trespass laws against them.” Those defendants did not even attempt to offend the state law by their numbers, e.g., 10 sitting at a counter for 59, in Peterson v. City of Greenville ( supra).
The record before us is quite different. None of these defendants were themselves refused any service by the bank. On the contrary, it is plain that the bank did serve them. None were shown to have applied for employment, or suffered the rejection of any application because of race, color, religion, or national origin. Except for some fleeting impressions from films, and speculation from photographs, the record is silent in all Cases on the race, color, etc. of the defendants. The best of the offers of proof arose in the companion case of *Supp. 935 People v. Brindley and Cawley, ante, p. 925 [47 Cal.Rptr. 668] (Case “C,” Crim. No. 7520). Question to an officer of the bank: ‘ ‘ During your association with the Bank of America in San Diego, Mr. Phillips, do you know of your own knowledge whether or not persons of the Negro race were denied equal opportunity for employment at any Bank of America facility?” The trial judge there sustained an objection as to relevancy and materiality. The offer of proof then ivas: “My offer of proof, your Honor, is to state that I have been informed and believe that there has been evidence submitted to the Fair Employment Practices Commission of the State of California by the Bank of America, and that with these questions I intend to elicit the information, if there is such information supplied by Mr. Phillips or persons under his supervision or within his cognizance, and that this evidence of discrimination is material and relevant on the grounds of Shelley v. Cramer doctrine which I have discussed with the Court and Counsel previously.” (Reporter’s partial transcript.) The defendants offered no evidence on their own behalf. They neither proved, nor tried to prove, that they suffered any discrimination or segregation at the hands of the bank or anyone else. Their own activity was shown clearly to take them beyond the protection of asserted constitutional right. Even the traditional embracing obligations of an innkeeper did not require him to stable the traveler’s horse in his kitchen.
Freedom op Speech
Appellants contend that since they were exercising constitutionally protected “First Amendment rights,” the failure of the prosecution to prove a clear and present danger to a substantial interest of the state requires this court to reverse the convictions.
They have discovered in the litigation what they misplaced in their demonstrations: that “ ‘it is a prized American privilege to speak one’s mind, although not always with perfect good taste, on all public institutions, . . .’ ” (Italics added) (New York Times Co. v. Sullivan, 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686, at p. 700, 95 A.L.R.2d 1412].)
The ambit of authorized restriction on free speech as an “absolute freedom” may be thought to narrow and widen with the constitution of the Supreme Court. We believe, nevertheless, that there has always been shown to be a difference between laws which intend to control the content of speech, and general regulatory statutes which only inci *Supp. 936 dentally touch the right of expression. (Konigsberg v. State Bar of Calif., 366 U.S. 36 [88 S.Ct. 997, 6 L.Ed.2d 105].) Even the “absolutists” on the Supreme Court agreed that a law which primarily regulates conduct but which might also indirectly affect speech can be upheld if the effect on speech is minor in relation to the need for control of conduct. (Justice Black in Barenblatt v. United States, 360 U.S. 109 [79 S.Ct. 1081, 3 L.Ed.2d 1115].) Thus the Supreme Court has less difficulty in frustrating broadly worded breach-of-the-peace statutes (Henry v. Rock Hill, 376 U.S. 776 [84 S.Ct. 1042, 12 L.Ed.2d 79]) than it does with narrowly drawn criminal trespass laws (Bell v. Maryland, 378 U.S. 226 [84 S.Ct. 1814, 12 L.Ed.2d 822], Mr. Justice Black). It is significant that in one case the court remarked that defendants were “at a place where the state’s law did not forbid them to be” (Henry v. Rock Hill, supra); and in the other, defendants had a right “to express their views wherever they had an unquestioned right to be” (Black in Bell). In neither ease was there physical obstruction or disorder or disturbance. Even in Marsh v. Alabama, 326 U.S. 502 [66 S.Ct. 276, 90 L.Ed. 265], relied on by appellants, the only objection to defendant’s presence on private property (a company town street) was his exercise of free, religious speech, and the content of that speech.
We need not decide the question raised by appellants in relation to the test of peaceful picketing on private property (Schwartz-Torrance Inv. Corp. v. Bakery etc. Union, 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921]), although some comparison will be helpful. The charges against these appellants involved entering land with intention to interfere with or obstruct a business; and violation of a court order. They were not within the specific exception to the trespass law for union activity expressed in Penal Code, section 552.1. (See also Cotton v. Superior Court, 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].)
It is of course true that some conduct, as peaceful picketing, is embraced Avithin the constitutional protection of free speech. But eAren picketing, a most favored vehicle for physical expression, is recognized as being “something more than free speech,” (Nahas v. Local 905, Retail Clerks International Assn., 144 Cal.App.2d 808, at p. 814 [301 P.2d 932, 302 P.2d 829]) and, the “clear and present danger” test as applied in the ordinary free speech cases is not necessarily controlling (Seven Up etc. Co. v. Grocery etc. Union, 40 Cal.2d 368 at p. 375 [254 P.2d 544, 33 A.L.R.2d 327]; In re *Supp. 937 Blaney, 30 Cal.2d 643 at p. 648 [184 P.2d 892]). “ ‘A state is not required to tolerate in all places . . . even peaceful picketing . .” (Seven Up etc. Co. v. Grocery etc. Union, supra; Hughes v. Superior Court, 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 965]).
So in the case at bench, the state has sought to forbid entering land with intention to interfere with or obstruct a business (Pen. Code, § 602, subd. (j)). The statute is certainly aimed “ ‘. . . specifically at evils within the allowable area of State control, . . .’ ” (In re Blaney, supra, 30 Cal.2d at p. 651).
If all picketing is said to involve conduct with some intent to interfere with an employer’s business, it is still quite another thing to say that the state cannot constitutionally punish some conduct which is altogether aimed at business interference. That conduct here is entry on another’s land for that purpose. If peaceful picketing may be caught up in the language of this statute, so that freedom of speech is curtailed, then to that extent this would be “but an instance of the power of the State to set the limits of permissible contest. ...” (Thornhill v. Alabama, 310 U.S. 88, at 103 [60 S.Ct. 736, 84 L.Ed. 1093].)
No precedent has been discovered, or cited to us, that permits the use of business premises even for peaceful picketing. Schwartz-Torrance, supra, only worked to equate shopping center sidewalks with public sidewalks, and only to that extent disapproved Nahas, supra. Even union activity on public streets or sidewalks may not lawfully interfere with the ingress and egress of patrons of a private business, or obstruct ways leading into private property. (Chrisman v. Culinary Workers’ Local, 46 Cal.App.2d 129 at p. 133 [115 P.2d 553]; In re Zerbe, 60 Cal.2d 666 at p. 670 [35 Cal.Rptr. 286, 388 P.2d 182].) In Zerbe the court pointedly avoided any ruling on First Amendment rights in the trespasser even as to Penal Code section 602, subdivision (Z), a much broader statute than section 602, subdivision (j).
These appellants may call the bank to task for its wrongs, real or not, but they may not themselves interfere with anything but the minds of their audience.
Federal Civil Rights Act of 1964
The appellants claim that their convictions must be vacated because of the passage of the federal Civil Rights Act of 1964. They cite the authority of Hamm v. Rock Hill (Dec. 1964) 379 U.S. 306 [85 S.Ct. 384, 13 L.Ed.2d 300] wherein *Supp. 938 state convictions for trespass in two “sit-in” eases were set aside. For the reasons apparent in our discussion of appellants’ position under the Fourteenth Amendment—“Equal Protection ’ ’—clause, we cannot affirm their argument here.
The Civil Eights Act was passed to secure, if not to enlarge, the rights of every person to equal treatment in places of public accommodation. The act did not enlarge anyone’s right to complain about the unequal treatment of others. Appellants here did not prove, or offer to prove, that they were being punished for 11 exercising or attempting to exercise any right or privilege secured by” the act. (Title II, § 203-C, Civil Eights Act.) See also Blow v. North Carolina (February, 1965) 379 U.S. 684 [85 S.Ct. 635, 13 L.Ed.2d 603].
Disobedience op Court Order
(Penal Code Section 166.4)
Appellants assert that their convictions under the third count of the complaints for wilful disobedience of a court order (Pen. Code, § 166.4) were erroneous because the trial court’s instruction to the jury did not require proof of knowledge in the defendants of the terms of the restraining order.
According to appellants’ brief, the judge instructed the jury on this subject as follows: “You are instructed that if the defendants were personally served with a copy of the Temporary Eestraining Order, and had knowledge that they had been served with a Temporary Eestraining Order, and thereafter wilfully violated the terms of the order, they are guilty of contempt. ’ ’ The record is not clear that this instruction reached the jury as outlined. The written instruction in the file, unsigned by the judge, bears a notation that it was modified, but the tenor of modification is not shown. Without approving the mechanics of this record, since the respondent has not found fault with appellants’ statement of the record, we will dispose of the issue as the parties have presented it.
Appellants have cited People v. Saffell, 74 Cal.App.2d Supp. 967 [168 P.2d 497], as requiring proof of knowledge of the terms of a restraining order and of the acts prohibited, as foundation for contempt. They have mistaken the decision in that case. The court was there ruling on a demurrer to a criminal complaint charging, among other things, a violation of Penal Code section 166.4. It was held that a charge substantially in the language of the statute “includes such knowledge on defendants’ part as is necessary to hold them in contempt” (74 Cal.App.2d Supp. at p. 980). Appellants have overlooked the environment from which the ruling arose. *Supp. 939 The court said, at page 978 of its opinion: “One who is not a party to an action and who has never teen formally served with a restraining order made therein may, nevertheless, be guilty of contempt of court in violating such order, under some circumstances. For the purpose of this discussion, we assume . . . that the defendants herein were not parties to the action in which the restraining order was issued,...” (Italics added.)
In the case at bench, all defendants were parties to the civil action in which the temporary restraining order was issued ■ all defendants were personally served with summons, complaint and order; all defendants were advised by a bank officer, prior to arrest, that they had been served with copies of a temporary restraining order issued by the superior court, and that they were acting in violation of such order; each defendant was advised by a deputy sheriff at the time of service that a court order was among the documents served. These facts clearly make the Saffell case (supra) inapplicable.
Appellants argue that the bulk of the documents served (between 50 and 60 pages) and the time lapse between service and the arrests (from five minutes to an hour) made it impossible as a matter of law for the defendants to inform themselves of the terms of the restraining order. At the least they have mistaken facts for permissible proof of facts. The thrust of the argument, that the People must show each defendant (subjectively) read and understood 60 pages of legal documents, would reach to unsettle the requirement of 10 days to appear on a complaint if that document happened to be too much for a particular defendant. It might be added here that the temporary restraining order was clearly titled, and was only two and a half pages long, including the title page. All defendants but one refused service altogether, and permitted the tendered documents to drop to the floor or street.
We do not need to say, and we do not hold, that in every ease a punishable contempt will occur the very moment a defendant is touched with summons and order, without some other element being shown. One such element, of course, would be the nature of the act required of defendant, and his ability to comply.
We do hold in the ease before us that such knowledge as a defendant must be shown to possess, in order to be found guilty of willful violation of a court order, may be shown by evidence that he was personally served with the order, and that he knew that fact. If the bulk of the order or the time between service and arrest are important, they are no more *Supp. 940 important than a defendant’s outright denial of any knowledge of the order. See Freeman v. Superior Court, 44 Cal.2d 533 [282 P.2d 857]. There the only evidence of knowledge in the defendant was that his attorney was in court when the order was made, and that his attorney was served with a copy of the order. The court held there was a disputable presumption “that notice to or knowledge possessed by an agent is imputable to the principal ...” (44 Cal.2d at p. 537) (italics added); and that presumption was sufficient to sustain a finding of knowledge in the face of defendant’s uncontradicted testimony to the contrary. ‘1 The Code of Civil Procedure does not provide how or by whom an injunction shall be served, but the important matter is that the party enjoined shall have notice, and the statute being silent, it is at the most sufficient if service is made in conformity with the mode prescribed with reference to service of summons.” (Golden Gate Consol. Hydraulic Min. Co. v. Superior Court, 65 Cal. 187 at p. 190 [3 P. 628].) “In order to punish for constructive contempt of court, it must appear that the order upon which the contempt proceeding is based has been served on the accused, or that he was present when the order was made, or that he had knowledge of it.” (Italics added.) (In re Felthoven, 75 Cal.App.2d 465, at p. 468 [171 P.2d 47].) “In order that one may be punished for contempt because of the violation of an order of court, it is essential that such person either have actual notice of the making of the order or that personal service of the order he had upon him prior to the time that he is charged with its violation. The failure to charge either such previous knowledge or previous service of the order constitutes a fatal defect in the proceedings. ...” (People v. Hadley, 66 Cal.App. 370, at p. 379 [226 P. 836].) (Italics added.)
In Sorrell v. Superior Court, 73 Cal.App.2d 194 [166 P.2d 80], the court ruled on a petition for habeas corpus brought to secure release from confinement after contempt proceedings. A complaint had been filed and restraining order issued on October 6, 1945, in which mass picketing and certain other acts were enjoined. The contempt citation alleged, and the court found, that the contempt was committed between October 6 and October 17. Petitioners questioned the service of the restraining order, contending that there was no evidence that petitioners had knowledge of the terms of the order. The court held the argument to be without merit, stating, at page 201:
“When process, consisting of summons and complaint or a *Supp. 941 restraining order, is personally handed to and left with a defendant, valid service has been made. No doubt there are circumstances in which the act of service would be deceptive, . . . but we have no such situation here. This petitioner was served as countless other people are served with process every day. It was found that he continued to march in the picket line on October 6th after he Avas served, but it is argued that he was not shown to have continued to do so after he had read the order. It was Ms duty to find out immediately whether he had been served with a restraining order. He was in an activity where he should have anticipated some court action to restrain him. ” ( Italics added.)
At the trial there was also evidence that the restraining order was read by a deputy sheriff over a loudspeaker before the petitioners were served. The court went on to state {Sorrell, supra, at p. 202) : “The question here is not whether this man was served, nor whether he knew or did not know the nature of the restraining order that was served upon him, nor whether he committed these acts of contempt of court. As to all of these matters the question is whether there was substantial evidence or an absence of evidence upon the questions of fact that were decided by the trial judge. ’ ’
We have been unable to find any requirement in the law of contempt, whether arising in criminal court or in the civil court, that a party to the action who is duly served with a preliminary order must be shown independently to have, subjectively, some additional information before being held to answer for disobedience. Cases which do search for such additional information have the premise that no personal service occurred. See Oil Workers International Union v. Superior Court, 103 Cal.App.2d 512 [230 P.2d 71]. There, notices of the existence of the restraining order were posted at entrances to the refinery; a deputy sheriff told one defendant about the existence of the order; the officers and committees of defendants’ union had knowledge of the restraining order, and some defendants gave contradictory testimony on the subject of knowledge during the trial. The court held in some individual cases that while proof of opportunity to know of the injunction through signs at the gates, alone, was not sufficient, taken with other evidence in the case knowledge was sufficiently shoAvn to sustain the contempt even without personal service.
The judge in the ease at bench instructed the jurv that personal service of the order upon the defendants anu *Supp. 942 knowledge in the defendants “that they had been served with a temporary restraining order” were prerequisites for finding defendants guilty of a willful violation of such order. He gave these defendants all of the protection the law requires.
Consecutive Sentences
Appellants urged that the trial court in giving consecutive sentences after conviction of defendants on each of three counts of the complaint imposed multiple punishment prohibited by Penal Code section 654.
The turning point in the application of this statutory principle came with the decision in Neal v. State of California, 55 Cal.2d 11 [9 Cal. Rptr. 607, 357 P.2d 839]. The test is: “Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of Section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.” (Neal, supra, 55 Cal.2d at p. 19.)
Since we have sustained defendant’s convictions only as to counts one and three of the complaint we need now consider only the application of these rules to defendants ’ acts in entering the bank premises with intention to interfere with or obstruct its business, and defendants’ acts in willful disobedience of the court’s restraining order.
Our understanding of the rule in the Neal ease is that it limits its own application to multiple crimes against a single victim. Defendants in the case at bench have been found guilty on the one hand of a criminal act involving injury to property rights, and on the other hand of offenses against the dignity and authority of a court of general jurisdiction. It is hardly enough for the defendants now to say that their offenses were physically and subjectively incident to the single broad objective of calling attention to the bank’s discriminatory hiring practices {arguendo), when both interference with the laws of the people of the state as to property, and willful disrespect for their courts are the results.
Accordingly the judgments as to count two are reversed. In all other respects the judgments are affirmed.
The foregoing opinion was reaffirmed on rehearing, see People v. Von Blum, post, pp. 943, 945.