70 Cal.2d 604 (1969)
In re DAVID OLIVER HAYES on Habeas Corpus.
Crim. No. 11647. 
Supreme Court of California. In Bank. 
Mar 17, 1969.
 Kenneth M. Wells, Public Defender, and Charles G. Fredericks, Assistant Public Defender, for Petitioner.
 Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Arnold O. Overoye, Deputy Attorneys General, for Respondent.
 MOSK, J.
 On December 30, 1966, petitioner David Oliver Hayes drove a motor vehicle for some 13 blocks in violation of Vehicle Code section 14601 (with knowledge of a suspended license) and Vehicle Code section 23102 (while under the influence of intoxicating liquor). He pleaded guilty to and was sentenced for both offenses.petitioner now asserts that imposition of sentences for both violations is contrary to the proscription against multiple punishment contained in Penal Code section 654. We have concluded that petitioner's contention lacks merit.
 [1] Section 654 provides that "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. ..." The interdiction is not limited to the provisions of the Penal Code, but embraces penal provisions in other codes as well, including those found in the Vehicle Code. (Neal v. State of California (1960) 55 Cal.2d 11, 18 fn. 1 [9 Cal.Rptr. 607, 357 P.2d 839]; People v. Kehoe (1949) 33 Cal.2d 711 [204 P.2d 321].)
 [2] The key to application of section 654 is in the phrase "act or omission": a defendant may be punished only once for each distinct "act or omission" committed. There have been numerous attempts in the cases to define a single "act," with varying degrees of clarity. Section 654 has been held to apply, for example, where the multiple violations are "necessarily included offenses" (People v. Knowles (1950) 35 Cal. *606 2d 175, 186 [217 P.2d 1]) and where there is a single "intent and objective" underlying a course of criminal conduct (Neal v. State of California (1960) supra, 55 Cal.2d 11) but not where there are multiple victims (id). Most of the cases construing section 654 can be resolved by application of one or the other of these theories. (See, e.g., In re Ford (1967) 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681] [kidnaping of three victims]; In re Ward (1966) 64 Cal.2d 672 [51 Cal.Rptr. 272, 414 P.2d 400] [kidnaping with intent to rob and robbery]; People v. Brown (1958) 49 Cal.2d 577 [320 P.2d 5] [abortion and resulting death]; People v. Craig (1941) 17 Cal.2d 453 [110 P.2d 403] [rape and statutory rape]; People v. Pater (1968) 267 Cal.App.2d 921 [73 Cal.Rptr. 823] [grand theft--auto and driving vehicle without owner's consent].) Unfortunately, these formulae are of only limited utility in the instant case, and we therefore begin anew with a direct analysis of the statute and its application to the facts before us. [fn. 1]
 To put petitioner's entire adventure into a few words: he drove his car with an invalid license and while intoxicated. Initially, it is temptingly easy to extract, as petitioner urges us to do, the single act of "driving," obviously common to both of the charged offenses, and to apply section 654 to this case on the theory that "driving" was petitioner's only "act or omission." However, to do so would be no more justified than to extract the act of "possession" from a charge of possessing two different items of contraband, an approach long rejected by our courts. (E.g., People v. Schroeder (1968) 264 Cal.App.2d 217, 227-228 [70 Cal.Rptr. 491] [multiple punishment for simultaneous possession of various narcotic drugs, not precluded by section 654]; People v. Lockwood (1967) 253 Cal.App.2d 75, 82-83 [61 Cal.Rptr. 131] [same]; People v. Lopez (1959) 169 Cal.App.2d 344, 350-351 [337 P.2d 570] [same]; People v. Mandell (1949) 90 Cal.App.2d 93, 98-99 [202 P.2d 348] [same]; People v. Wasley (1966) 245 Cal.App.2d 383 [53 Cal.Rptr. 877] [possession of different illegal weapons]; cf. People v. Schroeder, supra, 264 Cal.App.2d at pp. 228-229 [possession of single narcotic a single offense]; People v. Branch (1953) 119 Cal.App.2d 490 [260 *607 P.2d 27] [possession and sale of same narcotic].) [3a] We cannot overlook the crucial element: section 654 refers not to any physical act or omission which might perchance be common to all of a defendant's violations, but to a defendant's criminal acts or omissions. (See, e.g., In re Johnson (1966) 65 Cal.2d 393, 395 [54 Cal.Rptr. 873, 420 P.2d 393]; People v. Quinn (1964) 61 Cal.2d 551, 555 [39 Cal.Rptr. 393, 393 P.2d 705]; People v. Brown (1958) supra, 49 Cal.2d 577, 590; People v. Branch, supra, 119 Cal.App.2d at p. 496.) [fn. 2] Indeed, section 654 itself makes this distinction evident, since it refers to an act or omission "made punishable" by different statutes. [fn. 3] The neutral act of driving, like the mere act of possession in the foregoing cases, when viewed in a vacuum, is not "made punishable" by any statute.
 The proper approach, therefore, is to isolate the various criminal acts involved, and then to examine only those acts for identity. [4a] In the instant case the two criminal acts are (1) driving with a suspended license and (2) driving while intoxicated; they are in no sense identical or equivalent.petitioner is not being punished twice--because he cannot be punished at all--for the "act of driving." He is being penalized once for his act of driving with an invalid license and once for his independent act of driving while intoxicated. [fn. 4]
 Moreover, we must not confuse simultaneity with identity: in both of the above situations--driving as in this case and possession of contraband in the cited cases--the defendant committed two simultaneous criminal acts, which coincidentally had in common an identical noncriminal act. The two simultaneous criminal acts of possessing substance X and possessing substance Y share the common, "neutral" act of possessing, just as they necessarily share the common factor of lack of a valid prescription for the drugs. Likewise, the two *608 simultaneous--but distinct--criminal acts of driving with a suspended license and driving while intoxicated share the common, noncriminal act of driving. [fn. 5] On the date in question petitioner's act of driving was criminal and simultaneously violated two statutes because and only because of the presence of both the unrelated accompanying acts of voluntary intoxication and knowing possession of a suspended license. Similarly, for example, if an individual went for a walk in possession of a loaded gun while he was intoxicated and unclothed, he would by the single neutral act of walking--or, more accurately, being in a "public place"--simultaneously violate three separate and unrelated statutes. (Pen. Code, 12031, subd. (a); 647, subd. (f); 314.) [fn. 6] Those three statutes, however, would be violated not by the one noncriminal act of being in a public place but necessarily by three simultaneous though separate criminal acts. Once again, we must distinguish identical noncriminal acts from simultaneous criminal acts "made punishable" by law. [fn. 7]
 In attempting to equate simultaneity with identity, petitioner argues that "There was no evidence his driving without a license preceded the commencement of the driving while *609 under the influence." Thus if petitioner had begun driving while intoxicated at 11:50 p.m., and at midnight his license had expired but he had continued to drive, he apparently would concede that he could be punished for the two distinct acts of driving while intoxicated (before midnight) and driving with an expired license (after midnight). This arbitrary and wholly artificial distinction is unpersuasive. While separation in time may, in some contexts, make the legal separation of acts more apparent (see, e.g., In re Ward (1966) supra, 64 Cal.2d 672, 678; Seiterle v. Superior Court (1962) 57 Cal.2d 397, 401-403 [20 Cal.Rptr. 1, 369 P.2d 697]; People v. Howell (1966) 245 Cal.App.2d 787, 792 [54 Cal.Rptr. 92]), the converse does not necessarily follow.proximity in time between criminal events does not preclude multiple punishment (People v. Slobodion (1948) 31 Cal.2d 555 [191 P.2d 1]); and petitioner's acts were neither more nor less multiple because of the fortuitous fact that they were completely, rather than only partly, simultaneous. (People v. Wasley (1966) supra, 245 Cal.App.2d 383, 387.) [fn. 8]
 Nor can we subscribe to a contention that because petitioner may have had only one "intent and objective"--driving--when he committed the two violations, he comes within the ambit of the test established in Neal v. State of California (1960) supra, 55 Cal.2d 11. In Neal, the defendant had attempted murder by means of arson (burning down the victims' house by igniting gasoline therein). We viewed that circumstance as an indivisible "course of criminal conduct," the criminal act of arson being only the means toward an ultimate criminal objective of murder. We stated that where there was only a single "intent and objective" involved in such a course of criminal conduct, section 654 precluded multiple punishment.
 Here neither of the two violations can realistically be viewed as a "means" toward the other and as such a part of a single course of criminal conduct, in the sense that the arson in Neal was committed not to burn property but only as a *610 means toward the single objective of murder. Moreover, the petitioner's intent and objective to drive from one place to another is no more relevant to our analysis than what he intended to do when he arrived there. (See In re Ward (1966) supra, 64 Cal.2d 672, 676.) [3b] Just as it is the criminal "act or omission" to which section 654 refers, it is the criminal "intent and objective" that we established as the test in Neal. (E.g., In re Johnson (1966) supra, 65 Cal.2d 393, 395 [intent to sell heroin]; In re Ward (1966) supra, 64 Cal.2d 672, 676 [intent to rob].) In Neal we found to be crucial not the defendant's possible intent and objective to acquire money, to gain revenge or to ignite gasoline, but only his intent and objective to commit murder. [fn. 9] Although the absence of a single intent and objective does not necessarily preclude application of section 654 (see fn. 1 ante), it is clear that under the instant circumstances this test of Neal cannot be of aid to defendant.
 [4b] Petitioner relies heavily upon People v. Morris (1965) 237 Cal.App.2d 773 [47 Cal.Rptr. 253], which in a similar factual situation declared that section 654 proscribed multiple prosecutions for drunk driving and an invalid license. [fn. 10] [5] As we pointed out in Neal, however, "Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (Italics added.) Neal v. State of California (1960) supra, 55 Cal.2d 11, 21.) [4c] Therefore we need not reexamine at this time the validity of the conclusions in Morris as to multiple prosecutions, other than to observe that they are disapproved to the extent they might relate to a multiple punishment problem. [fn. 11] *611
 In summation, then, section 654 of the Penal Code proscribes multiple punishment for a single "act or omission which is made punishable" by different statutes, i.e., a single criminal act or omission. Since the mere act of driving is made punishable by no statute, it is not the type of act or omission referred to in section 654. The acts "made punishable" which this petitioner committed were (1) driving with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654.
 The order to show cause is discharged, and the petition for writ of habeas corpus is denied.
 McComb, J., Peters, J., and Burke, J., concurred.
 TRAYNOR, C. J.
 I dissent.
 Section 654 of the Penal Code provides that "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one." Underlying this deceptively simple language is a legislative determination that essentially unitary criminal activity shall not be punished more than once regardless of how many distinct crimes it may comprise. The statute "has been applied not only where there was but one 'act' in the ordinary sense ... but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." (People v. Brown (1958) 49 Cal.2d 577, 591 [320 P.2d 5].) Since its application is not limited to cases in which the identical conduct violates two statutes or one offense is necessarily included in the other [fn. 1] (Neal v. State of California *612 (1960) 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839], and cases cited), the words an "act ... made punishable ... by different provisions" do not refer to the entire criminal conduct proscribed by each provision but to conduct significantly common to both.
 Thus, in People v. Logan (1953) 41 Cal.2d 279, 290 [260 P.2d 20], we held that a defendant who committed robbery by striking his victim with a baseball bat could be punished only once for that act, since the "one act of inflicting force with the bat cannot both be punished as assault with a deadly weapon and availed of by the People as the force necessary to constitute the crime of robbery." Although the act of striking the victim was not by itself made punishable by different provisions of the Penal Code, it nevertheless fell within section 654 because it was an essential element of both the robbery and the assault. (In re Chapman (1954) 43 Cal.2d 385, 389 [273 P.2d 817].)
 Moreover, there is no requirement that the act common to both crimes be punishable before section 654 comes into play. In Neal v. State of California, supra, 55 Cal.2d 11, the act common to both crimes was the act, not punishable by itself, of throwing lighted gasoline. It was made punishable as arson because the gasoline was thrown into a house and as attempted murder because it was thrown onto human beings. Since it "is the singleness of the act and not of the offense that is determinative" (People v. Knowles (1950) 35 Cal.2d 175, 187 [217 P.2d 1]), Neal could not be punished for both of those crimes. In People v. Craig (1941) 17 Cal.2d 453, 458 [110 P.2d 403], the act common to both statutory and forcible rape was the act, innocent by itself, of sexual intercourse. (See In re Lane (1962) 58 Cal.2d 99, 104 [22 Cal.Rptr. 857, 372 P.2d 897].) Although the additional elements of the force used and the age of the victim made the act punishable under different subdivisions of section 261 of the Penal Code, the defendant could be punished only once.
 The foregoing cases control this case, for petitioner's single act of driving was an essential element, indeed the only active element, of the two crimes charged, namely, driving with knowledge that his driving privilege was suspended (Veh. Code, 14601) and driving while under the influence of intoxicating liquor. (Veh. Code, 23102.)
 Cases involving simultaneous possession of different items of contraband are obviously not to the contrary (e.g., People v. Schroeder (1968) 264 Cal.App.2d 217, 227-228 [70 Cal. *613 Rptr. 491] [multiple punishment for simultaneous possession of various narcotic drugs, not precluded by section 654]; People v. Lockwood (1967) 253 Cal.App.2d 75, 82-83 [61 Cal.Rptr. 131] [same]; People v. Lopez (1959) 169 Cal.App.2d 344, 350-351 [337 P.2d 570] [same]; People v. Mandell (1949) 90 Cal.App.2d 93, 98-99 [202 P.2d 348] [same]; People v. Wasley (1966) 245 Cal.App.2d 383, 387 [53 Cal.Rptr. 877] [possession of different illegal weapons]; cf. People v. Schroeder, supra, 264 Cal.App.2d at pp. 228-229 [possession of single narcotic a single offense]; People v. Branch (1953) 119 Cal.App.2d 490, 495-496 [260 P.2d 27] [possession and sale of same narcotic]), for the possession of one item is not essential to the possession of another separate item. One does not possess in the abstract; possession is meaningless unless something is possessed. The possession of each separate item is therefore a separate act of possession.
 Of course, had petitioner been convicted of a "crime" of being intoxicated and a "crime" of knowing that his driving privilege was suspended, the possession cases would be in point, and section 654 would not preclude punishing petitioner for both offenses even though he committed them simultaneously. In such a case there would be no act of petitioner common to the two crimes.petitioner, however, was not convicted of being intoxicated and knowing that his driving privilege was suspended but of a single act of driving while intoxicated and while his driving privilege was suspended. It is the singleness of that act that is determinative.
 The Attorney General contends, however, that Vehicle Code sections 14601 and 23102 have different public purposes directed at distinct evils, and that the driver who violates both statutes simultaneously should be doubly punished because he is invading two social interests that the Legislature had designated for distinct protection by the enactment of two different statutes. In a jurisdiction without a multiple punishment rule like that of Penal Code section 654, this "distinct evil" test might aid the courts in ascertaining whether the Legislature intended cumulative punishments for simultaneous violations of statutes like Vehicle Code sections 14601 and 23102. (See Twice in Jeopardy (1965) 75 Yale L.J. 262, 320; Kirchheimer, The Act, the Offense, and Double Jeopardy (1949) 58 Yale L.J. 513, 523.) In California, however, when the rule of section 654 precluding multiple punishment applies, the courts cannot invoke the "distinct evil" test to evade that statutory rule. (But see People v. Winchell (1967) 248 Cal. *614 App.2d 580, 596 [56 Cal.Rptr. 782]; People v. Wasley, supra, 245 Cal.App.2d 383, 386; People v. Poe (1965) 236 Cal.App.2d Supp. 928, 942 [47 Cal.Rptr. 670].) [fn. 2]
 Moreover, any notion that a California court can multiply sentences because defendant's single act violates statutes that, in the court's view, vindicate different societal interests should have been dispelled by decisions such as People v. Brown, supra, 49 Cal.2d 577, 590 (defendant cannot be sentenced both for criminal abortion and for murder caused by the same act), and People v. Craig, supra, 17 Cal.2d 453, 457 (defendant cannot be sentenced for both statutory rape and forcible rape committed by one act of intercourse forced upon a 16-year-old girl; compare, People v. McCollum (1931) 116 Cal.App. 55, 58 [2 P.2d 432], a prosecution for both statutory rape and incest resulting from defendant's one act of intercourse with his 16-year-old daughter; the trial court correctly anticipated the Craig decision, but the appellate court withheld judgment on the question).
 The Attorney General contends that multiple punishment should be allowed in accord with the statement in Neal v. State of California, supra, 55 Cal.2d 11, 20, that "the purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." The Neal opinion made the quoted statement in the course of an inquiry into legislative purpose [fn. 3] *615 with respect to the extent of punishment of a defendant who criminally injures or kills more than one victim. In holding that section 654 does not forbid the separate punishment of a defendant's multiple crimes of violence that harm multiple victims, even though a single physical movement of the defendant is the one common cause of injuries or deaths of the several victims, Neal speaks of the multiple victim problem in terms of culpability [fn. 4] and consequences. [fn. 5] Moreover, under the orthodox theory of crime on which the Legislature based the Penal Code, the act of killing A is essentially distinct from the act of killing B even when a single muscular contraction of the defendant is the common cause of both deaths. The concept of punishment "commensurate with his criminal liability," used in Neal as an aid to the determination of legislative purpose in a multiple victim case, cannot be wrenched from that context and invoked in the present case to justify ignoring the controlling precedents upon which the court in Neal relied in holding that Neal could not be punished both for arson and attempted murder.
 The Attorney General also contends that petitioner's uninterrupted *616 and factually indivisible course of driving (see People v. Kehoe (1949) 33 Cal.2d 711, 715 [204 P.2d 321]) can be split to permit multiple sentencing by application of the Neal "intent and objective" test (55 Cal.2d at p. 19): "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." That test was not designed to permit multiple sentencing that section 654 clearly forbids but to preclude improper multiplication of sentences when there is at least some arguable question as to the factual divisibility of defendant's course of criminal conduct. [fn. 6] *617
 There is no such arguable question in this case. Even if there were, Neal would support petitioner, for he had only the single intent and objective to get from one place to another. There is nothing in Neal to indicate that the intent and objective of the defendant must be criminal before it may be deemed relevant in determining whether a course of criminal conduct is not divisible so as to give rise to no more than one act within the meaning of section 654. Although the Neal case and the cases following it involved criminal intents and objectives (see cases cited in footnote 6 supra), that fact is not controlling. It is wholly anomalous to seize on the innocence of the defendant's intent and objective as determinative just as it is wholly anomalous to seize on the innocence of the act common to both crimes as determinative. It is a strange inversion that a defendant who commits an act that is the essential and crucial element of two crimes can be punished twice if that act by itself is innocent or the defendant's intent and objective are innocent but can be punished only once if the common act or the intent and objective are criminal.
 Tobriner, J., and Sullivan, J., concurred. *618
 Since possession of a physical object is an "act" within the meaning of section 654, the defendant who possesses two different kinds of contraband in violation of two different statutes is committing two different "acts" of proscribed possession.
 The Poe case, supra, 236 Cal.App.2d Supp. 928, 942, unlike Winchell and Wasley, decided the double punishment issue erroneously and should therefore be disapproved. In Poe precisely the same conduct of the defendants was a trespass proscribed by Penal Code section 602, subdivision (j), and a contempt proscribed by Penal Code section 166, subdivision 4. The appellate court upheld dual sentences for this single "act" on the theory that the trespass was a crime against property whereas contempt was a crime against the authority of the superior court.
 Neither Neal nor Brown presented any question of a "divisible" transaction. In each of those cases one factually indivisible act was a common element of defendant's violation of two statutes. In Neal the defendant threw and ignited gasoline with intent to and did commit both arson and attempted murder. In Brown the defendant's act that was intended to abort L also killed her. In both cases section 654 forbade sentencing the defendant for the two crimes committed by the one act, and there was no occasion to inquire whether his offenses were or were not "incident to one objective."
 Other decisions cited in Neal and Brown, however, show that Neal's "intent and objective" test should guide the sentencing judge in cases presenting a "course of action" or "transaction" that, by oversubtle division of the evidence of acts and intents, could be split into a series of discrete crimes proscribed by different statutes directed against basically the same kind of criminality. (See, e.g., People v. Kehoe, supra, 33 Cal.2d 711, 713, 715; People v. Greer, supra, 30 Cal.2d 589, 603; compare People v. Slobodion (1948) 31 Cal.2d 555, 562 [191 P.2d 1].) In such cases the sentencing court is confronted with a state of facts that may or may not come within "the meaning of section 654" in the sense that, although section 654 does not give a comprehensive or definitive rule enabling the solution of all multiple sentencing problems, it does indicate a general legislative purpose of lenity so far as the multiplication of sentences is concerned. Sometimes (as in Greer) the statutes defining the separate crimes in themselves will enable the court to ascertain the legislative purpose that they should not be separately punished, without resort to section 654. If, however, there remains a doubt as to the legislative purpose concerning the multiplication of sentences, the doubt should be resolved in favor of lenity. (In re Tartar (1959) 52 Cal.2d 250, 257 [339 P.2d 553]; People v. Ralph (1944) 24 Cal.2d 575, 581 [150 P.2d 401]; see In re Estrada (1965) 63 Cal.2d 740, 744-745 [48 Cal.Rptr. 172, 408 P.2d 948].) In this class of cases "the meaning of section 654" and the "intent and objective" test direct the courts toward lenity in the same way that a judicially recognized "basic principle that forbids multiple punishment for one criminal act" forbids splitting a course of conduct into multiple violations of the same statute whenever there is a doubt as to the propriety of such fragmentation. (In re Johnson (1966) 65 Cal.2d 393, 395 [54 Cal.Rptr. 873, 420 P.2d 393].)
 Neal's "intent and objective" test also governs sentencing in cases of multiple convictions for both an inchoate crime (e.g., burglary, conspiracy, solicitation, and like offenses that in fact and by definition are committed not as ends in themselves but as preparation for the consummation of a further criminal purpose) and substantive crimes committed in execution of the inchoate purpose. There may be no single external "act" necessarily common to the preparatory offense and the ultimate offense to bring the case precisely within the preclusion of section 654, but by application of the "intent and objective" test the legislative purpose expressed by that section is effected. Illustrating this application of Neal are People v. McFarland (1962) 58 Cal.2d 748, 760-762 [26 Cal.Rptr. 473, 376 P.2d 449] (burglary with intent to commit larceny and the larceny); People v. Hicks (1965) 63 Cal.2d 764, 765-766 [48 Cal.Rptr. 139, 408 P.2d 747] (burglary with intent to commit sexual felonies and the consummated sex offenses); In re McGrew (1967) 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161] (same); In re Cruz (1966) 64 Cal.2d 178, 180-181 [49 Cal.Rptr. 289, 410 P.2d 825] (conspiracy to commit grand theft and grand theft); In re Romano (1966) 64 Cal.2d 826, 828 [51 Cal.Rptr. 910, 415 P.2d 798] (conspiracy, burglary, and theft); In re Pratt (1967) 66 Cal.2d 154, 156 [56 Cal.Rptr. 895, 424 P.2d 335] (kidnaping for the purpose of robbery and robbery); In re Malloy (1967) 66 Cal.2d 252, 256 [57 Cal.Rptr. 345, 424 P.2d 929] (same). Examples need not be multiplied; the principle is plain. (See Twice in Jeopardy (1965) supra, 65 Yale L.J. 262, 319; Kirchheimer, The Act, the Offense, and Double Jeopardy (1949) supra, 58 Yale L.J. 513, 518; ALI Model Penal Code Proposed Official Draft (1962) 1.07(1)(b), and Tent. Draft No. 5 (1956) Comment to former 1.08 at pp. 37-38.)
NOTES
[fn. 1] 1. Our analysis herein is in no way intended to preclude application of the above tests where appropriate, any more than those tests themselves are mutually exclusive. It is only because we find all the foregoing formulae inapplicable that we resort to the present approach. If under any of the enunciated tests the proscription of section 654 applies, a contrary result under another test is irrelevant.
[fn. 2] 2. The language in Johnson is typical: "The basic principle that forbids multiple punishment for one criminal act [citations] precludes infliction of more than one punishment for [a] series of acts directed toward one criminal objective. ..." (Italics added.) (65 Cal.2d at p. 395 (per Traynor, C. J.).)
[fn. 3] 3. Compare former section 1938 of the New York Penal Law, referred to in Neal as "identical with" section 654, which uses the specific language, "An act or omission which is made criminal and punishable. ..." (Italics added.)
[fn. 4] 4. On the other hand, the single criminal act of driving with knowledge of an invalid license is arguably "made punishable" by both Vehicle Code section 14601 (driving with a suspended or revoked license) and Vehicle Code section 12500 (unlicensed driving); and section 654 would therefore preclude multiple punishment under both sections.
[fn. 5] 5. As a further illustration of the analogy: Petitioner could be said to have driven in possession of a suspended license and in "possession" (in his system) of intoxicating liquor. Again, possession is the neutral or noncriminal identical factor; but the criminal acts are distinctive.
[fn. 6] 6. Petitioner attaches significance to the fact that driving was an essential element in both of his offenses, citing a statement first made in In re Chapman (1954) 43 Cal.2d 385, 390 [273 P.2d 817]: "It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished." (Italics added.) Aside from the dubious vitality of this dictum (see People v. Collins (1963) 220 Cal.App.2d 563, 579 [33 Cal.Rptr. 638]), "essentiality" in and of itself was and is not a sufficient test of the applicability of section 654. On closer scrutiny, in fact, the quoted statement itself presupposes the existence of a single ("same") act; and we have seen that the only single acts that are relevant for purposes of section 654 are criminal acts. In the example suggested above, none of the hypothetical acts is a crime if committed in private; thus being or walking in a public place, like driving in the instant case or like possession and lack of a prescription in the narcotics example, is a necessary element in all three crimes. Yet this fact does not make those neutral elements in themselves punishable or criminal, for none is by itself a complete criminal act. Thus the fortuitous identity of "essential" neutral elements remains irrelevant for our purposes.
[fn. 7] 7. To the possession and driving examples might well be added the cases which permit multiple punishment where a single criminal act has more than one victim. (See Neal v. State of California (1960) supra, 55 Cal.2d 11, 20-21, and cases therein cited.) There might, for example, be one common act of shooting a gun, but distinct criminal acts of killing victim X and killing victim Y. However, as we indicated in Neal, this particular test takes in additional considerations, such as degree of culpability, which might be inappropriate to apply in other contexts.
[fn. 8] 8. The Attorney General, in apparent answer to petitioner's argument, has made a belated attempt to establish that petitioner may have been observed by the arresting officer at two different times, so that technically the offenses charged were not "simultaneous." It is just such strained rationale that a test dependent on simultaneity would engender. As stated in People v. Pater (1968) supra, 267 Cal.App.2d 921, 926, a "necessarily included offense" case, "Neither clocks, calendars nor county boundaries convert one continuing course of conduct into a series of criminal acts."
[fn. 9] 9. Thus had the defendant there had the completely independent criminal objectives of murder (perhaps for vengeance) and burning the house (to collect fire insurance), or had he attempted to kill his victims with a gun and then set fire to their house as an afterthought, he would have been punishable for both arson and attempted murder. (See People v. Massie (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869]; Seiterle v. Superior Court (1962) supra, 57 Cal.2d 397, 401.)
[fn. 10] 10. A majority of the Morris court, given substantially the same argument presented to us, rejected the "criminal act" definition for section 654 and appeared to apply the Chapman test of "essentiality." (But see dissent by Whelan, J., id., p. 777.)
[fn. 11] 11. We note that even where the issue is multiple prosecution, the provisions of section 654 cannot be employed to mislead the court. Thus if a greater violation is concealed in order to gain "immunity" by prosecution for a lesser crime, section 654 will not apply. (Kellett v. Superior Court (1966) 63 Cal.2d 822, 827- 828 [48 Cal.Rptr. 366, 409 P.2d 206]; Gail v. Municipal Court (1967) 251 Cal.App.2d 1005 [66 Cal.Rptr. 91]; Hampton v. Municipal Court (1966) 242 Cal.App.2d 689 [51 Cal.Rptr. 760].)
[fn. 1] 1. For example, a single act of statutory rape would in every case also constitute contributing to the delinquency of a minor, and the latter offense is therefore necessarily included in the former. (People v. Greer (1947) 30 Cal.2d 589, 597-598 [184 P.2d 512].)
[fn. 2] 2. Both Winchell and Wasley correctly upheld dual sentences for simultaneous but different "acts." In Winchell the defendant simultaneously violated Penal Code section 12021, forbidding possession by an ex-convict of a pistol capable of being concealed on his person, and Penal Code section 466, forbidding possession of "a picklock, crow, keybit, or other instrument or tool with intent feloniously to break or enter into any building." In Wasley the defendant simultaneously violated section 12021, proscribing possession of a concealable pistol by an ex-convict, and section 12020, proscribing possession of a sawed-off shotgun by "any person." The decisions mention the different public purposes served by the two statutes violated by the respective defendants, but they do not purport to announce a "distinct evils" test contrary to section 654.
[fn. 3] 3. It is a legislative, not a judicial, function to fix the extent of punishment that can be imposed for any particular crime or group of crimes. Subject only to constitutional limitations, the Legislature can define crimes and set their punishments as it sees fit. (Bell v. United States (1955) 349 U.S. 81, 82 [99 L.Ed. 905, 909, 75 S.Ct. 620]; People v. Knowles (1950) 35 Cal.2d 175, 181 [217 P.2d 1]; In re Rosencrantz (1928) 205 Cal. 534, 537-538 [271 P. 902].) The courts cannot impose criminal penalties for conduct that the Legislature has not made punishable (United States v. Wiltberger (1820) 18 U.S. 76, 93 [5 L.Ed. 37, 42]; Matter of Ellsworth (1913) 165 Cal. 677, 681 [133 P. 272]; Havemeyer v. Superior Court (1890) 84 Cal. 327, 376 [24 P. 121, 18 Am.St.Rep. 192, 10 L.R.A. 627]; Pen. Code, 15) or adjudge punishment in excess of that authorized by the Legislature. (People v. Lein (1928) 204 Cal. 84, 87 [266 P. 536]; People v. Riley (1874) 48 Cal. 549; In re Rye (1957) 152 Cal.App.2d 594, 596 [313 P.2d 914]; In re Carmignani (1925) 71 Cal.App. 632, 633 [235 P. 1033].) The Legislature can and does command multiple punishments for some crimes (e.g., Pen. Code, 67, 68, 98 [disqualification from or forfeiture of office in addition to any other punishment for certain offenses]) and it authorizes the courts in their discretion to impose multiple punishments for others (e.g., the familiar statutory provision that a crime is punishable by imprisonment, fine, or both). The Legislature could also, if it saw fit to do so, expressly command or authorize multiple sentences for a group of crimes, however closely they might be related. Instead, the California Legislature, so far as multiple sentences for related crimes are concerned, has seen fit to enact the general multiple punishment preclusion of section 654.
[fn. 4] 4. "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (55 Cal.2d at p. 20.)
[fn. 5] 5. "Section 654 is not '... applicable where ... one act has two results each of which is an act of violence against the person of a separate individual.' " (55 Cal.2d at pp. 20-21, quoting from People v. Brannon (1924) 70 Cal.App. 225, 235-236 [233 P. 88].)
[fn. 6] 6. The Neal opinion stated its "intent and objective" test immediately after it had quoted from People v. Brown, supra, 49 Cal.2d 577, 591, the comment that "Section 654 has been applied not only where there was but one 'act' in the ordinary sense ... but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654."