[Crim. No. 17075. Second Dist., Div. Five. Aug. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY SALDANA AGUIRRE, Defendant and Appellant.

**COUNSEL**

Albert L. Gordon for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence P. Scherb II, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**REPPY, J.—**

### I. STATEMENT OF THE CASE

Defendant was charged by information with two violations of section 11911 of the Health and Safety Code, possession for sale of a restricted

dangerous drug. Count I specified amphetamine sulphate (benzedrine). Count II specified barbituric acid (seconal).[1] Following denials of motions made under Penal Code sections 995 and 1538.5, defendant pleaded not guilty. The matter was submitted properly to the trial court without a jury on the transcript of the preliminary hearing and additional evidence. Defendant was found guilty on both counts and sentenced to state prison, the terms on the two counts to run concurrently. Defendant appeals from the judgment of conviction and, purportedly, from the order denying a motion for new trial.[2]

## II. Contentions of Defendant on Appeal

(1) Information furnished to the police by an informer was insufficient to provide probable cause for the arrest of defendant without a warrant.

(2) The subsequent search of defendant's apartment incidental to that arrest was unreasonable in scope.

(3) Simultaneous possession for sale of two varieties of drugs covered by section 11911 will not support dual convictions.

## III. Facts Related to the Contentions

Officer Victor Wanek testified as to probable cause for arrest. He related that at about 10 p.m. on Saturday, May 25, 1968, he listened to a telephone call to his partner, Officer Ortiz, from an informer whose voice Officer Wanek recognized from a prior telephone conversation about eight months previous and whose tips had resulted in arrest and conviction on at least six prior occasions known to Officer Wanek. As to this conversation, in response to a question put by the deputy district attorney, Officer Wanek testified as follows:

"A. . . . The information was that a person known as Benny Aguirre—and the [informant] also gave us a license number of his car—has crossed the border on Saturday night and was bringing a large shipment of dangerous drugs into the United States and that he would have these drugs in his apartment. And he gave the address as 2327 Elmgrove.

"Q. Is that in Los Angeles?

"A. Yes."

On cross-examination Officer Wanek testified that he had a second conversation with the same informant on Sunday, May 26, 1968, between

---

[1] Defendant also was charged in a third count with possession of marijuana in violation of section 11530 of the Health and Safety Code, but he was found not guilty.

[2] The latter is a nonappealable order. (Pen. Code, § 1237.)

4 and 5 p.m. With respect to this conversation, in response to a question put by the court, Officer Wanek testified as follows:

"THE COURT: . . . Officer, what was the information—and this will be limited to probable cause—that you received on the 26th prior to the arrest?

"THE WITNESS: That Mr. Aguirre was in Los Angeles, that he had brought a very large shipment of dangerous drugs in Los Angeles, that he brought it in sometime Saturday night from Tijuana, and that it was now in his apartment at 2327 Elmgrove."[3]

The court then sought to ascertain whether the informant had given the officer any details as to the source of his information. The questions and answers were as follows:

"THE COURT: Did this informant advise you as to the basis of his knowledge. [*Sic*]

"THE WITNESS: Partly, yes, not entirely.

"THE COURT: What did he tell you in that regard?

"THE WITNESS: That he knew as a fact that Mr. Aguirre had told the informant that he would have a large shipment in Los Angeles on Sunday. . . ."

Officer Wanek also testified concerning the arrest and the search. He related that at about 6:15 p.m. he and Officer Ortiz drove to the location in question and parked approximately one block from defendant's apartment; that he observed the vehicle in question drive into the driveway and pull to the rear of the lot at the address in question; that he and Officer Ortiz coming from one direction and defendant from another met at the door of defendant's apartment; that before they met, defendant had opened the door to the apartment with a key; that when he advised defendant that he was there on a narcotic investigation and asked if he could come in and make a search, defendant had replied that he could not unless he had a search warrant. Officer Wanek's testimony concerning the arrest was as follows:

"A. . . . At that time I informed Mr. Aguirre that he was under arrest and that a search would be made.

---

[3]Just a little later in his testimony the officer summarized the contents of these two calls as follows: "The informant called [on Saturday] to say it was coming in, and Sunday he said it was there and was in the apartment."

"Q. Now, at the point you placed him under arrest, where was he?

"A. He was standing in the doorway of the apartment, he just opened the door."

Officer Wanek further related that he took defendant into the apartment; that defendant's wife, who had come outside the front door, walked in;[4] that they were seated on the sofa in the living room and a search of the apartment was made; that on the floor of the bedroom two large paper sacks were found which contained approximately 57,000 tablets of dangerous drugs.[5]

Officer Wanek, whose expertise was stipulated to, further testified that the manner of packaging of the dangerous drugs indicated that they were held for sale.

## IV. DISCUSSION

### 1. *Probable Cause for the Arrest*

The constitutional principles enunciated in *Augilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and more recently in *Spinelli* v. *United States,* 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584], although warrant cases, govern the determination of whether the information supplied by the informant was sufficient to give probable cause for the arrest. ■ To enable a trial court to determine that it provided the testifying officer probable cause to arrest without a warrant, the information which the officer testifies was given to him by the informant must be as specific and authoritative as that which would satisfy a magistrate if it were before him in an affidavit made by the officer. (*People* v. *Madden,* 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971]; *People* v. *Castaneda,* 1 Cal.App.3d 477, 481 [82 Cal.Rptr. 205].)

■ For an officer's testimony based on an informant's hearsay statement to be legally sufficient to provide probable cause for an arrest (1) it must provide information establishing that the informant was credible; and (2) it must allege the informant's statement in factual, not conclusional, language and show that the informant spoke with personal knowledge or contain underlying factual information from which the magistrate reason-

---

[4]Defendant's wife was a codefendant, but she was acquitted. Further details of her movements and of her arrest which took place after a search of the premises produced contraband need not be set forth.

[5]A search of the vehicle was also made and a sack containing approximately 1,000 tablets of dangerous drugs was found. However, these were not introduced into evidence. Only the items found during the search of the apartment came into evidence. Consequently, the validity of the search of the vehicle was not put in question.

ably can conclude that his information was reliable. *(People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)

■ In the instant case, we feel both requirements were satisfied through the testimony of Officer Wanek.

The fact that both Officers Wanek and Ortiz recognized the voice of the informant as one who had previously provided them or other officers with information leading to arrests and convictions was sufficient evidence to support the trial court's finding that the informant was reliable *(People* v. *Castaneda, supra,* 1 Cal.App.3d 477, 479, 482; *People* v. *Aguilar,* 240 Cal.App.2d 502, 508 [49 Cal.Rptr. 584].)

Next, as *Hamilton* requires, the officers needed from the informant something which would indicate that *on this particular occasion* he had gained his information in a reliable way. Officer Wanek testified that the informant gave him a basis as to only part of the information. The inform-.ant, according to Officer Wanek, said that defendant himself told him that "he would have a large shipment in Los Angeles on Sunday."[6] Timewise it seems logical that defendant told this to the informant on Saturday evening, the day and time given by the informant to the officer as the occasion when defendant crossed the border with the contraband.

It is quite clear in the instant case that had the informer alleged that he had been inside the house and had seen the contraband, this would have satisfied the personal knowledge requirement. ■ "In common usage, 'personal knowledge' is not always the equivalent of 'I saw' but often refers merely to matters which the informer heard or read from a source which he credits, and *the test is not whether the informer had doubts about his information but whether an independent magistrate should credit the informer's information.*" (Italics added.) *(Price* v. *Superior Court,* 1 Cal.3d 836, 841 [83 Cal.Rptr. 369, 463 P.2d 721].) ■ The informer here could not make his allegation based on personal observation, which if his vision were satisfactory, would prove a highly reliable report. He instead relied on what he was told by defendant. Our Evidence Code allows reliance on such admissions by an accused as proof of the truth stated therein. (Evid. Code, § 1220; cf. § 1230.) This reflects the notion that such state-

---

[6]The thought construction of the excerpt from the record, although not given punctuation by the transcriber, indicates that it was in two segments. In the first phrase, "that he knew as a fact," the officer started to say that the informant told him that he, the informant, knew a certain circumstance as a fact. The officer then broke off, apparently realizing that he was about to report the informant's statement as if it had been made in conclusional form, and recommenced to say, in the second phrase, that the informer told him (the officer) that defendant told him (the informant) that the (defendant) would have a large shipment in Los Angeles on Sunday.

ments have a built-in reliability surrounding them which approaches the magnitude of first hand personal observation.

Recently our Supreme Court, in dicta, alluded to the equivalence of personal knowledge and admissions: "Although they [the police officers] might assume from . . . [the informer's] position as assistant superintendent of schools that he was personally reliable, it does not appear that . . . [he] witnessed marijuana parties at the house *or himself overheard petitioners or others planning such a party for the night in question.*" (Italics added.) (*Mann* v. *Superior Court*, 3 Cal.3d 1, 6 [88 Cal.Rptr. 380, 472 P.2d 468].)

We feel that with the above factors before it the trial court was entitled to conclude that the information which the informer conveyed was gained in a reliable way, and thus that there was a high probability that it was true. Those factors satisfy the *Spinelli* requirement that the information be "more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. (*Spinelli* v. *United States, supra,* 393 U.S. 410, 416 [21 L.Ed.2d 637, 643].)

The officer did not testify that the informant had said that personal word from defendant was his source of knowledge for the balance of the information—that on Saturday he had crossed the border with the drugs and that now (Sunday) defendant was at his apartment and that the contraband was there. However, information from an informant that the defendant told him what he would do in the near future and then that he had done it (although the latter is not attributable to direct word from defendant) appears to meet the *Aguilar-Spinelli* standard. The source aspect of the first segment of information carries over to the second. (See above quotation from *Mann* v. *Superior Court;* cf. Evid. Code, § 1250; *People* v. *Alcalde,* 24 Cal.2d 177 [148 P.2d 627].)

The sequence and totality of the information in the instant case (on Saturday that defendant had crossed the Mexican border with a large quantity of dangerous drugs and would have them in his apartment in Los Angeles; on Sunday that defendant was in his apartment with the drugs), were adequate for probable cause.

2. *Legality of the Search*

██ We next turn to defendant's argument that the warrantless search of his apartment was unreasonable in scope. Defendant bases his argument on *Shipley* v. *California,* 395 U.S. 818 [23 L.Ed.2d 732, 89 S.Ct. 2053]. There the United States Supreme Court held that where a defendant was arrested as he alighted from his car some 15 to 20 feet from his dwelling place the police, as incidental to the arrest, could not escort him into that

dwelling and conduct a search. The court reiterated its previous holding that a search " 'can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.' (Citation.)" (Italics theirs.) Further it noted that " 'it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest *therein.*' (Citation.)" (Italics theirs.) The principles announced in *Shipley* were recently reemphasized in *Vale* v. *Louisiana,* 399 U.S. 30, 33 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969], which concerned an arrest of a suspect on the front steps of his house. A subsequent search inside the house was held unlawful as not incidental to the arrest.

■ These cases clearly indicate that for a warrantless, pre-*Chimel*[7] search within a suspect's home to be valid, the arrest upon which the search is incident must take place within the confines of that home. ■ Indulging all inferences in favor of the People, who prevailed below (*People* v. *Redmond,* 71 Cal.2d 745, 754-755 [79 Cal.Rptr. 529, 457 P.2d 321]), we interpret the officer's testimony concerning the location of defendant when he was arrested, "standing in the doorway," after he had opened the door with his key, as meaning that his body was half inside the apartment and half outside,[8] which, we feel, put him inside the house within the legal sense. Therefore, the arrest took place within the house. It did not take place, in the words of the United States Supreme Court in *Vale* " 'somewhere outside—whether 2 blocks away . . ., 20 feet away . . ., or on the sidewalk near the front steps.' " (399 U.S. at p. 34 [26 L.Ed.2d at p. 413].) This permitted the search of the premises. (Cf. *People* v. *Pressley,* 242 Cal.App.2d 555, 559 [51 Cal.Rptr. 563]; *People* v. *Rodriguez,* 238 Cal.App.2d 682, 690 [48 Cal.Rptr. 117].)

---

[7]The permissible scope of a search, even incidental to an arrest, was drastically reduced in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. However, the search in the instant case took place prior to the date of that decision the effect of which was held not to be retroactive. (*People* v. *Edwards,* 71 Cal.2d 1096, 1107 et seq. [80 Cal.Rptr. 633, 458 P.2d 713]; see also *In re Lara,* 1 Cal.3d 486, 490-491 [82 Cal.Rptr. 628, 462 P.2d 380]; cf. *Skelton* v. *Superior Court,* 1 Cal.3d 144, 155-156 [81 Cal.Rptr. 613, 460 P.2d 485].)

[8]As a matter of fact the judge who presided below at the hearing on defendant's Penal Code sections 995 and 1538.5 motions placed (and reasonably so) that interpretation on the testimony given at preliminary hearing. He stated: "You almost have a situation here not of a person really outside and not of a person really inside, but a person almost with one foot inside and one foot outside. It couldn't get much closer than this." He then concluded: ". . . I feel that under the circumstances, with the door open and the man almost in, his wife coming out and then following him, . . . this was a proper . . . search incident to an arrest."

### 3. *Dual Convictions Under Health and Safety Code section 11911*

██ Defendant's final contention—that his possession for sale of large quantities of amphetamine sulphate and barbituric acid does not constitute two offenses for which he may be twice convicted—is untenable in light of this court's decision in *People* v. *Schroeder,* 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491]. Health and Safety Code section 11900, the section defining dangerous drugs lists amphetamine sulphate as an "Amphetamine" (§ 11901, subd. (b)) and barbituric acid as a "hypnotic drug" (§ 11901, subd. (a)). Under *Schroeder,* such separate legislative classification will support dual convictions. (*People* v. *Seaberry,* 260 Cal.App.2d 507, 510 [67 Cal.Rptr. 182]; see also *People* v. *Mason,* 276 Cal.App.2d 386, 389-390 [81 Cal.Rptr. 195] [hg. den.].)

### V. Disposition

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied September 17, 1970, and appellant's petition for a hearing by the Supreme Court was denied October 22, 1970.