[Crim. No. 17993. In Bank. June 23, 1975.]

In re JAMES EDWARD ADAMS, JR., on Habeas Corpus.

**COUNSEL**

James Edward Adams, Jr., in pro. per., and Joe Reichmann, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Juliet H. Swoboda, Deputy Attorneys General, for Respondents.

## OPINION

**RICHARDSON, J.**—In this case, we consider whether the statutory proscription against multiple punishment (Pen. Code, § 654) applies to the simultaneous transportation of different kinds of illegal narcotics and drugs. We have concluded that where, as in the instant case, different kinds of drugs are simultaneously transported in one, indivisible transaction, with the single intent and objective of delivering them to another person, only one act of illegal transportation occurs. It follows that petitioner Adams' multiple count sentences must be modified as set forth below.

On February 17, 1970, Smith, a state narcotics agent, had under surveillance the Redondo Sea Inn, the temporary residence of petitioner's codefendant, Gregory. About 7 p.m. Smith observed petitioner drive into the inn's parking lot, park his car next to Gregory's car, and enter the inn. Twenty minutes later, petitioner and Gregory left the inn, opened the trunks of their cars and transferred an attaché case and numerous plastic bags from petitioner's car to Gregory's car. Later that same evening Gregory met with Miller, an undercover narcotics agent, to complete a previously arranged sale of 30,000 amphetamine (benzedrine) pills to Miller. Once the sale was consummated, Miller arrested Gregory and searched his car, discovering additional quantities of benzedrine, seconal, marijuana, heroin and pantopon (a form of opium). All of these drugs had been delivered by petitioner to Gregory under the observation of Smith.

Petitioner was convicted, following a nonjury trial, of one count of selling benzedrine (former Health & Saf. Code, § 11912, now § 11379) and five separate transportation counts involving seconal (former Health & Saf. Code, § 11912, now § 11379), benzedrine (same), marijuana (former Health & Saf. Code, § 11531, now § 11360), heroin (former Health & Saf. Code, § 11501, now § 11352), and pantopon (same). For sentencing purposes the trial court grouped the three counts under section 11912 (sale of benzedrine and transportation of seconal and benzedrine) and made their sentences run concurrently. The court further grouped and made concurrent the sentences on the three transportation counts (marijuana, heroin and pantopon). The concurrent sentences for each of these two groups were then ordered to run consecutively.

In this habeas corpus proceeding, petitioner first contends that Penal Code section 654 invalidates his conviction for five separate counts of transporting drugs, since the act of transportation constituted a single course of conduct accompanied by a single intent and objective. ■ Habeas corpus is an appropriate remedy to correct sentences which are invalid or excessive under section 654. (*Neal* v. *State of California,* 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].)

Penal Code section 654 provides in pertinent part that "[a]n act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one." We have held that this section's reference to "provisions of this Code" was not intended to exclude penal provisions found in other statutes such as the Health and Safety Code. (See *People* v. *Brown,* 49 Cal.2d 577, 591, fn. 4 [320 P.2d 5].)

Notwithstanding the apparent simplicity of its language, the applicability of section 654 in a particular case often involves a difficult analytical problem. (See Schneider, *Penal Code section 654: The Prosecutor's Dilemma* (1965-66) 17 Hastings L.J. 53.) Each case must be determined on the basis of its own facts, and general principles applicable to one type of case may not apply to another. We caution that in the instant case we are concerned with the application of section 654 to narcotics offenses only.

■ If one offense is necessarily included within another offense, section 654 bars punishment for both offenses. (*People* v. *Bauer,* 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) For example, under some circumstances if a person possesses narcotics which he subsequently sells, the possession offense is necessarily included in the sale and may not be separately punished. (*People* v. *Francis,* 71 Cal.2d 66, 73-74 [75 Cal.Rptr. 199, 450 P.2d 591].) However, if a person sells only part of the narcotics he possesses, both the offenses of possession and sale may be punished, since possession of the excess unsold narcotics was not necessary to the sale. (*People* v. *Fusaro,* 18 Cal.App.3d 877, 894 [96 Cal.Rptr. 368]; *People* v. *Fortier,* 10 Cal.App.3d 760, 765-766 [89 Cal.Rptr. 210].) As we explain below, this latter principle would permit punishment of petitioner for the separate offenses of selling benzedrine and transporting benzedrine, as only a portion of the benzedrine transported by petitioner was sold to the agent.

The reach of section 654 is not limited, however, to necessarily included offenses. (*People* v. *Bauer, supra,* 1 Cal.3d 368, 375-376.) By its terms, the section forbids multiple punishment for the commission of a single "act" or "omission." ■ The "act" necessary to invoke section 654 need not be an act in the ordinary sense that it is a separate, identifiable, physical incident, but may be "a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*Id.,* p. 376.) For example, in *Bauer, supra,* we noted that ". . . the taking of several items during the course of a robbery may not be used to furnish the basis for separate sentences. . . . [Citing *In re Ward,* 64 Cal.2d 672 (51 Cal.Rptr. 272, 414 P.2d 400), and *People* v. *Quinn,* 61 Cal.2d 551 (39 Cal.Rptr. 393, 393 P.2d 705).] These cases make clear that where a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible." (*Id.,* pp. 376-377.) We further explained in *Bauer* that 'the theft of several articles at the same time constitutes but one offense although such articles belong to several different owners. [Citations.]" (*Id.,* p. 378.)

On the other hand, if the evidence discloses that a defendant entertained "multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People* v. *Beamon,* 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]; *In re Hayes,* 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430].) For example, in *Hayes,* we held that section 654 was inapplicable to a defendant who simultaneously committed violations of driving while intoxicated (Veh. Code, § 23102) and driving with knowledge of a suspended license (Veh. Code, § 14601). As we subsequently explained in *Beamon,* ". . . neither of the *Hayes* violations, although simultaneously committed, was a means toward the objective of the commission of the other. The objectives, insofar as the criminal conduct was concerned, were deemed by the [*Hayes*] majority to be to drive while intoxicated and to drive with a suspended license." (8 Cal.3d at p. 639.)

From the foregoing there emerges the principal inquiry—was the defendant's criminal objective single or multiple? In the instant case, the evidence discloses that petitioner simultaneously transported a variety of illegal drugs with the single intent and objective of delivering them to codefendant Gregory. Our analysis leads us to the conclusion that it would be unreasonable to fragment that single objective into five separate objectives, namely, to transport benzedrine, to transport heroin, to transport seconal, etc. Instead, the entire transaction should reasonably be viewed as constituting an indivisible course of conduct analogous to the theft of several articles of personal property which, under *Bauer,* results in the commission of a single punishable offense.

The People rely upon a line of cases which have held that the simultaneous *possession* of different types of drugs properly may be multiply punished. (*People* v. *Fusaro, supra,* 18 Cal.App.3d 877, 893; *People* v. *Aguirre,* 10 Cal.App.3d 884, 893 [89 Cal.Rptr. 384]; *People* v. *Schroeder,* 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491]; *People* v. *Seaberry,* 260 Cal.App.2d 507, 510 [67 Cal.Rptr. 182]; *People* v. *Bell,* 258 Cal.App.2d 450 [65 Cal.Rptr. 730]; *People* v. *Lockwood,* 253 Cal.App.2d 75 [61 Cal.Rptr. 131]; *People* v. *Lopez,* 169 Cal.App.2d 344, 351 [337 P.2d 570]; *People* v. *Mandell,* 90 Cal.App.2d 93, 98-99 [202 P.2d 348]; see *In re Hayes, supra,* 70 Cal.2d 604, 606-607 [citing rule with apparent approval].) The foregoing rule appears to be based upon the rationale that "[t]he act of possession cannot be conceptualized as a single 'act' covering possession of two kinds of illicit drugs." (*Fusaro,* at p. 893.) This rule does not apply if the drugs possessed are "all of one·kind," such as various derivatives of the drug opium. (*Schroeder,* at p. 228.)

By analogy to the foregoing cases, the People suggest that the "act" of transportation of multiple types of drugs should not be deemed a single act. Yet, as explained in *Bauer* and *Beamon,* if the defendant's course of conduct is motivated by a single intent and objective, the proscription against multiple punishment applies. In each of the drug possession cases, the defendant's possession may or may not have·been motivated by a single intent and objective, for one may possess drugs for a variety of reasons. In the instant case, however, petitioner's simultaneous transportation of the various drugs in his possession was clearly motivated by the single objective of delivering them to Gregory. Thus, although we do not disapprove the multiple punishment rule invoked in the drug possession cases relied upon by the People, the rule has no application to situations in which the defendant possesses the drugs for the purpose of accomplishing only a single criminal objective.

The People urge that multiple punishment is proper in this case since the transportation of each of the various drugs involved herein is punishable under separate provisions of the Health and Safety Code. Indeed, some of the drug possession cases support the view that "separate legislative classification will support dual convictions." (*People v. Aguirre, supra,* 10 Cal.App.3d 884, 893; see *People v. Schroeder, supra,* 264 Cal.App.2d 217, 228.) Yet, by its very terms, section 654 prohibits multiple punishment of an act or omission "made punishable in different ways by different provisions of this Code . . . ." If, as we have determined, only one "act" of transportation took place in this case, then only one punishment may be exacted for that act, and we conclude that petitioner may be punished for only one act of illegal transportation of drugs.

■ Penal code section 654, however, does not bar imposition of an additional punishment for the sale of benzedrine. Petitioner was convicted on the sale count on evidence that he aided and abetted codefendant Gregory. This evidence was not necessarily limited to petitioner's transportation of the drug, and in any event we are precluded from reexamining the sufficiency of the evidence to sustain the sale conviction (see *In re Lindley,* 29 Cal.2d 709, 723 [177 P.2d 918]). Since the sale involved only a portion of the drugs transported by petitioner, the sale was not necessarily included within the offense of transportation. (See *People v. Fusaro, supra,* 18 Cal.App.3d 877, 894.) Moreover, the sale involved an additional criminal objective on petitioner's part beyond the mere delivery of drugs to codefendant Gregory. Thus, we conclude that petitioner may be punished for selling benzedrine and for transporting any *one* of the five drugs delivered to Gregory.

The trial court imposed both consecutive and concurrent sentences in this case: two groups of concurrent sentences were made to run consecutively. Although each conviction may be allowed to stand, for section 654 prohibits multiple punishment, not multiple convictions (*People v. Tideman,* 57 Cal.2d 574, 586-587 [21 Cal.Rptr. 207, 370 P.2d 1007]), the section's proscription extends to include both concurrent and consecutive sentences, since even concurrent sentences may work a disadvantage to petitioner in the fixing of his term and parole date by the Adult Authority. (*In re Wright,* 65 Cal.2d 650, 652-654 [56 Cal.Rptr. 110, 422 P.2d 998].) The proper procedure for remedying a violation of section 654 *is to* "eliminate the effect of the judgment as to the less

severely punishable offense insofar as penalty alone is concerned." (*Id.,* p. 656.)

In the case before us, each of the transportation counts, as well as the sale count, carries a term of five years to life imprisonment, with a minimum of three years to be served in prison without parole. Accordingly, in view of the trial court's intent to impose consecutive sentences, we conclude that the sentences imposed under counts two (sale of benzedrine) and six (transportation of heroin) should remain consecutive, and that execution of the sentences imposed under the remaining transportation counts should be stayed. (See *People* v. *Beamon, supra,* 8 Cal.3d 625, 639-640; *People* v. *Milan,* 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956].)

Petitioner suggests that preclusion from parole for a minimum of six years (by reason of the consecutive sentences) constitutes cruel and unusual punishment and a denial of equal protection. In support of his contentions, petitioner relies upon our decision in *In re Foss,* 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], which invalidated a 10-year mandatory minimum sentence for repeated drug offenders. Our decision in *Foss* rested in part upon our determination that it was improper to punish severely the repetition of a drug offense by persons who might be addicts acting to support their habits. In the instant case, the six-year mandatory minimum term arises by reason of the trial court's discretionary judgment to impose consecutive sentences for separate criminal offenses. The record fails to disclose any abuse of discretion in this regard. (See *People* v. *Giminez,* 14 Cal.3d 68, 71-72 [120 Cal.Rptr. 577, 534 P.2d 65].) Unlike the situation in *Foss,* there is no indication in the present record that petitioner was an addict selling drugs to support his habit. Indeed, the large quantities of drugs transported in the single transaction before us suggest that petitioner may have been a major drug supplier. We decline petitioner's invitation to extend our *Foss* ruling to invalidate consecutive mandatory minimum sentences prescribed for initial drug offenders.

The judgment is modified to stay execution of the sentences under counts three, four, five and seven pending service of consecutive sentences under counts two and six; such stay to become permanent when service of sentence under counts two and six is completed. Petitioner is not entitled to release since he is held under a valid

judgment of conviction. The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.