Filed 9/26/14  P. v. Farmer CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ENNIS ALONSO FARMER, JR.,<br><br>        Defendant and Appellant. | C072066<br><br>(Super. Ct. No. 11F08000) |

A jury found defendant Ennis Alonso Farmer, Jr., guilty of possession of heroin for sale (Health & Saf. Code, § 11351; count 1); sale, transportation, or offer to sell heroin (*id.*, § 11352, subd. (a); count 2); possession of cocaine base for sale (*id.*, § 11351.5; count 3); sale, transportation, or offer to sell cocaine base (*id.*, § 11352, subd. (a); count 4); possession of methamphetamine (*id.*, § 11377, subd. (a); count 5); possession of cocaine for sale (*id.*, § 11351; count 6); sale, transportation, or offer to sell cocaine (*id.*, § 11352, subd. (a); count 7); driving with a suspended or revoked license

1

(Veh. Code, § 14601.1, subd. (a); count 8); and misdemeanor resisting, delaying, or obstructing an officer (Pen. Code,[1] § 148, subd. (a)(1); count 9). In a bifurcated proceeding, the jury also found true allegations defendant had a prior drug conviction (Health & Saf. Code, § 11370, subd. (c)) and had three prior strike convictions for robbery while armed with a firearm (§§ 667, subds. (b)-(i); 1170.12).

The trial court sentenced defendant to 100 years to life, plus three years in state prison, consisting of four consecutive 25 years to life terms on counts 1, 3, 5, and 6 under the three strikes law, plus a consecutive three years for the prior drug conviction. The trial court stayed defendant's sentences on counts 2, 4, and 7 pursuant to section 654 and did not impose sentences on counts 8 and 9.

Defendant appeals, contending (1) the trial court abused its discretion in refusing to dismiss two of the three prior strike allegations; (2) the trial erred in failing to stay his sentences on counts 3, 5, and 6 under section 654, or alternatively in failing to impose concurrent, as opposed to consecutive, sentences on those counts; and (3) his sentence must be vacated and the matter remanded for resentencing with directions that he be sentenced as a "second striker" under the amended provisions of the three strikes law and Proposition 36.

Finding no error, we shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2011, at approximately 7:40 a.m., California Highway Patrol (CHP) Officer Wesley Fish saw defendant run a red light. Fish followed defendant as defendant proceeded onto the freeway. For safety reasons, Fish waited until defendant exited the freeway before initiating a traffic stop. Defendant pulled into a gas station and

---

[1] Further undesignated statutory references are to the Penal Code.

2

stopped. Fish approached defendant's car, told him the reason for the stop, and asked him for his driver's license, registration, and proof of insurance. Defendant told Fish he did not have a driver's license. Fish could smell "unburned marijuana."

Officer Fish returned to his motorcycle to contact dispatch and confirm defendant did not have a driver's license. As he did so, he observed defendant repeatedly looking over his shoulder at Fish and reaching toward his car's glove compartment. Fish could not see what defendant was reaching for, and thus, had him step out of the car. Once defendant was outside the car, Fish attempted to search him, but defendant ran away before Fish was able to finish. As defendant ran, "a white object fell from the front of his person . . . ." Fish pursued defendant and eventually took him into custody.

Meanwhile, CHP Officer Rory Erdvig secured the area surrounding defendant's car and found a plastic bag on the ground about one foot from the left rear door. The plastic bag contained smaller bags of what appeared to be narcotics. Forensic analysis revealed that the larger plastic bag contained 18 individually wrapped bindles of heroin with a combined weight of 13.7 grams, four individually wrapped bindles of rock cocaine with a combined weight of 2.0 grams, one individually wrapped bindle of methamphetamine weighing 0.5 grams, and a plastic bag of cocaine weighing 4.8 grams.

Inside the glove compartment of defendant's car, officers found a plastic bag containing marijuana, several unused syringes, and a scale. They also found three cell phones inside the car and a laptop computer in the trunk. Defendant dropped an additional cell phone while he was running, which contained multiple text messages from individuals requesting narcotics. The phone also contained a video of defendant discussing various drugs, relating his phone number, and stating, "you need I got" and "[y]ou can get your needs met, you know, it's on wheels whatever you need it's on wheels." A smashed glass methamphetamine pipe was found in the same place as the cell phone defendant dropped while fleeing.

Defendant had over $1,500 in various denominations in his possession.

3

## DISCUSSION

### I
### The Trial Court Did Not Abuse Its Discretion in Refusing to Dismiss Two of the Three Prior Strike Allegations

Defendant contends the trial court abused its discretion in refusing to dismiss two of the three prior strike allegations. More particularly, he asserts "the trial court . . . abused its discretion by placing too much emphasis on [his] prior criminal history, and by not giving enough consideration to the fact that all of [his] current felony convictions were for nonviolent drug-related crimes." We are not persuaded.

Before trial, defendant requested that the trial court exercise its discretion to dismiss two of the three prior strike allegations, noting that each of the prior strikes arose from a "single incident" and that he had remained "relatively free from arrests" after he was released from prison in 2004. The trial court acknowledged defendant's prior strikes arose from a single incident during which defendant, a felon armed with a firearm, robbed 17 patrons of a bar and attempted to rob three others, but noted that the circumstances of defendant's prior strike convictions was only one of the factors it must consider. The court asked defendant about his family and job prospects, and defendant indicated that he had an 18-year-old daughter and that he had "walked away" from his job at a machine shop and studying to be a counselor and a minister six or seven months before his arrest on the current offenses. The court also considered the nature and circumstances of defendant's current offenses, which it found involved planning and professionalism insofar as defendant possessed various narcotics, large amounts of cash, multiple cell phones, a laptop computer, a digital scale, and multiple syringes. In addition, the court noted that defendant had numerous prior convictions, had served

4

multiple prison terms, and his performance on parole had been unsatisfactory.[2]  Based on the above and the lack of any mitigating factors, the court found defendant was not outside the spirit of the three strikes law and denied his motion to strike two of his prior strike convictions.

A trial court has discretion under the three strikes law to dismiss prior conviction allegations in the furtherance of justice.  (§ 1385, subd. (a); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 (*Romero*).)  In exercising this power, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  We defer to the trial court's exercise of its discretion; we will not reverse the court's denial of a *Romero* motion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

The three strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.  [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as where the court was not aware of its discretion or considered impermissible factors.  (*Carmony, supra,* 33

---

[2]  The parties stipulated that the court could consider defendant's section "969(b) package" and rap sheet in deciding the motion to dismiss.

Cal.4th at p. 378.) Only in "extraordinary" circumstances, "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme," would the trial court's failure to strike a strike constitute an abuse of discretion. (*Ibid.*) This is not such a case.

Defendant claims the trial court abused its discretion "by placing too much weight on [his] prior convictions and by ignoring the mitigating factors in his favor." More particularly, he asserts that the trial court ignored the following facts and circumstances: (1) all of his prior strikes arose from a single incident, (2) his "non-strike priors," which included commercial burglary, drug offenses, and driving under the influence, "were all nonviolent," and (3) his "current convictions were all nonviolent felonies that arose from a single aberrant period of behavior."

The trial court did not ignore the facts and circumstances cited by defendant; rather, it found they were insufficient to take defendant outside the spirit of the three strikes law. The court acknowledged that "all [of the prior strikes] stem from one event," and correctly noted that it must consider additional factors, including defendant's past criminal record, the nature and circumstances of the current offenses, the factors in mitigation and aggravation, and defendant's background, character, and prospects. (*Williams, supra,* 17 Cal.4th at p. 161.) As set forth above, the trial court considered these factors and concluded defendant did not fall outside the spirit of the three strikes law. While it did not expressly state that defendant's current offenses were nonviolent, the court plainly was aware of the nature of those offenses when it made its determination.

Contrary to defendant's assertion, his current offenses for possessing heroin, cocaine, and cocaine base for sale can hardly be described as arising from "a single aberrant period of behavior." "Aberrant behavior" means "[a] single act of unplanned or thoughtless criminal behavior." (Garner, Black's Law Dict. (9th ed. 2009) p. 4.) Defendant's lengthy criminal history includes a 1991 conviction for possession of rock

6

cocaine for which he was sentenced to two years in state prison, and a 1993 conviction for transporting cocaine base for which he was sentenced to three years in state prison. He suffered his prior strike convictions in 1997 and spent most of the next decade in prison. Moreover, the evidence recovered from defendant's car and surrounding area indicates his current offenses did not arise from an unplanned or thoughtless act of criminal behavior. To the contrary, the multiple packages of various narcotics, the presence of a scale and large amount of cash, and the text messages and video found on defendant's cell phone indicate defendant was in the business of selling drugs.

The trial court acted well within its discretion in refusing to dismiss two of the three prior strike allegations.[3]

---

[3] While this case was pending on appeal, our Supreme Court decided *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), holding that the trial court was required to dismiss one of the defendant's two prior strike convictions (robbery & carjacking) because they were based on the defendant's commission of the same act (forcibly taking the victim's car). The court found that "the trial court's failure in these circumstances to dismiss one of defendant's two prior strike convictions, and instead to treat her as a third-strike offender, was inconsistent with the intent underlying both the legislative and initiative versions of the Three Strikes law," (*id.* at p. 645) which suggested a defendant "would have three chances–three swings of the bat, if you will–before the harshest penalty could be imposed." (*Id.* at p. 646.) Following our Supreme Court's decision in *Vargas*, we asked the parties to file supplemental letter briefs addressing the following issue: "Do defendant's three prior strike convictions arise out of a 'single act' within the meaning of *People v. Vargas* (Jul. 10, 2014, S203744)?" Having reviewed the parties' briefs, we find that, unlike *Vargas*, defendant's three prior strike convictions (each for robbery) do not arise out of a single act. While the convictions arise out of a single incident; each involves a separate criminal act. Defendant along with two other individuals entered a bar. Defendant went straight to the bar area, pointed a gun at the bartender's stomach, and told him to give him his wallet and open the register. Meanwhile, the other individuals went from patron to patron, demanding money and jewelry.

## II
### The Trial Court Did Not Err in Failing to Stay Defendant's Sentences on Counts 3, 5, and 6, or in Directing That the Sentences on Those Counts Be Consecutive to His Sentence on Count 1

Defendant contends the trial court erred in failing to stay his sentences on counts 3 (possession of cocaine base for sale), 5 (possession of methamphetamine), and 6 (possession of cocaine for sale) under section 654 "because all of [his] convictions were based on a single act of possessing multiple types of drugs in a single bag." Alternatively, he contends the trial court erred in directing that his sentences on those counts be consecutive to, rather than concurrent with, his sentence on count 1 (possession of heroin for sale). We disagree with both contentions.

As relevant to our analysis here, defendant was convicted of possession of heroin for sale (count 1), possession of cocaine base for sale (count 3), possession of methamphetamine (count 5), and possession of cocaine for sale (count 6), and was sentenced to four consecutive terms of 25 years to life in state prison as a result. The trial court declined to stay defendant's sentences on counts 3, 5, and 6 pursuant to section 654 because "the evidence . . . supports the conclusion that [defendant] intended multiple sales of the various types of narcotics to different customers. [¶] There was a scale that was found where the narcotics were recovered in the case. He possessed multiple unused syringes. Much of the narcotics were packaged for individual sales. And his -- I don't know how to describe it -- the self-produced cell phone video, he, . . . himself describes his involvement in drug sales." The court declined to exercise its discretion to run defendant's sentences on those counts concurrent with defendant's sentence on count 1 "because the crimes and their objectives were predominantly independent of each other and pursuant to California Rule of Court 4.425(b)." The court also noted that it had "considered the aggravated factors under California Rule of Court 4.421 as delineated at page 11 of the probation report."

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 bars multiple punishments for both a single act that violates more than one criminal statute and for multiple acts, where those acts comprise an indivisible course of conduct incidental to a single criminal objective and intent. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) "Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*, fn. omitted.) Multiple criminal objectives may "be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts. The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act." (*People v. Mesa* (2012) 54 Cal.4th 191, 199.)

We review the trial court's factual findings in imposing multiple punishment for substantial evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) In doing so, we view the record in the light most favorable to the trial court's findings and presume the existence of every fact the trial court could reasonably deduce from the evidence. (*Ibid.*)

Courts, including this one, have long held that "[t]he act of possession cannot be conceptualized as a single 'act' covering possession of two kinds of illicit drugs. Thus [a] defendant may be separately punished for the criminal act of possessing [two different

9

kinds of contraband], although both acts occurred simultaneously and both drugs were found at the same place." (*People v. Fusaro* (1971) 18 Cal.App.3d 877, 893, disapproved of on another ground in *People v. Brigham* (1979) 25 Cal.3d 283, 292; see also *In re Adams* (1975) 14 Cal.3d 629, 635; *People v. Schroeder* (1968) 264 Cal.App.2d 217, 228; *People v. Lockwood* (1967) 253 Cal.App.2d 75, 82-83; *People v. Lopez* (1959) 169 Cal.App.2d 344, 350-351; *People v. Mandell* (1949) 90 Cal.App.2d 93, 98-99.) Our Supreme Court recently approved of such holdings in *People v. Jones* (2012) 54 Cal.4th 350, stating: "We recognize that what is a single physical act might not always be easy to ascertain. In some situations, physical acts might be simultaneous yet separate for purposes of section 654. For example, in [*In re*] *Hayes* [(1969) 70 Cal.2d 604], both the majority and the dissenters agreed that, to use Chief Justice Traynor's words, 'simultaneous possession of different items of contraband' are separate acts for these purposes. (*Hayes*, *supra*, 70 Cal.2d at p. 612 (dis. opn. of Traynor, C. J.); see *id.* at pp. 606–607 (maj. opn.).) As Chief Justice Traynor explained, 'the possession of one item is not essential to the possession of another separate item. One does not possess in the abstract; possession is meaningless unless something is possessed. The possession of each separate item is therefore a separate act of possession.' (*Id.* at p. 613 (dis. opn. of Traynor, C. J.).) We do not intend to cast doubt on the cases so holding." (*Id.* at p. 358, fn. omitted.) Here, defendant's simultaneous possession of different items of contraband constituted separate acts under section 654.

We next consider whether defendant's multiple acts of possession comprised an indivisible course of conduct incidental to a single criminal objective and intent. (*People v. Latimer*, *supra*, 5 Cal.4th at p. 1208.) Our decision in *People v. Blake* (1998) 68 Cal.App.4th 509 (*Blake*) is instructive. There, the defendant was convicted of transportation of methamphetamine and transportation of marijuana. (*Id.* at p. 510.) On appeal, he argued the trial court erred in imposing sentences for both convictions "because he transported both drugs in his car at the same time . . . ." (*Ibid.*) In rejecting

that argument and concluding that "the evidence supports a reasonable inference that defendant had separate objectives in transporting the methamphetamine and marijuana in that he intended to sell them to different customers," (*ibid.*) we relied on the following facts: "(1) the marijuana and methamphetamine were stored in separate containers in different concealed compartments of the car; (2) the marijuana was packaged in a manner consistent with multiple, individual sales; (3) the amounts of marijuana and methamphetamine were consistent with delivery to more than one individual; (4) the difference between the drugs suggests they were 'directed at different buyers' [citation], and (5) the presence of a 'pay-owe' sheet with multiple entries, a police scanner, baby wipes, and a scale indicates defendant was engaged in an elaborate drug trafficking operation involving multiple sales to different individuals, rather than one single delivery." (*Id.* at p. 512, fn. omitted; see also *People v. Briones* (2008) 167 Cal.App.4th 524, 529-530 ["There were two types of drugs in large amounts. This supports the inference Briones intended multiple sales to different customers."].)

The record in this case likewise supports an inference defendant intended multiple sales to different customers. Although the heroin, cocaine base, cocaine, and methamphetamine were contained in a single plastic bag, the heroin was further divided into 18 smaller bindles and the rock cocaine (base) into four smaller bindles. While the 4.8 grams of powdered cocaine was not divided into smaller bindles, defendant had a scale in his glove compartment. Defendant also had multiple cell phones and a large amount of cash in numerous denominations. Perhaps most tellingly, the cell phone defendant dropped as he fled from Officer Fish contained multiple text messages from individuals requesting narcotics, and a video of defendant discussing various drugs and stating, "you need I got" and "[y]ou can get your needs met, you know, it's on wheels whatever you need it's on wheels." Only one individually wrapped bindle of methamphetamine weighing 0.5 grams was found in the bag and a smashed glass methamphetamine pipe was found near the cell phone defendant dropped while fleeing.

11

Defendant was charged and convicted of simple possession, as opposed to possession for sale. The record supports a reasonable inference that defendant possessed the methamphetamine for personal use. Because the evidence supports a reasonable inference that defendant had separate objectives in possessing the various narcotics, the trial court did not err in failing to stay defendant's sentences on counts 3, 5, and 6.

Defendant also contends the trial court erred in directing that his sentences on counts 3, 5, and 6 run consecutive to, as opposed to concurrent with, his sentence on count 1. More specifically, defendant argues the trial court was required to determine whether defendant was eligible for concurrent sentencing under section 667, subdivision (c)(6) before applying the relevant criteria under California Rules of Court, rule 4.425. In addition, citing his previous arguments, he claims "the trial court . . . did not properly apply all of the relevant criteria of [California Rules of Court,] rule 4.425 . . . ."

Section 667, subdivision (c)(6) states: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." "By implication, consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.'" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512-513.) The trial court here plainly was aware of its discretion to direct that the sentences run concurrent. At sentencing, defendant requested concurrent sentencing on counts 3, 5, and 6 pursuant to section 1170.12, subdivision (a)(6), which is virtually identical to section 667, subdivision (c)(6),[4] because "[t]his is

_____

[4] Section 1170.12, subdivision (a)(6) states: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section."

12

basically one event where [defendant's] possessing multiple drugs." In denying his request, the court indicated it "would not exercise the discretion to sentence him concurrently . . . ."

With respect to defendant's claim that "the trial court . . . did not properly apply all of the relevant criteria of [California Rules of Court,] rule 4.425," defendant forfeited any claim of error on appeal by failing to raise the issue in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Even assuming the issue was preserved for review, California Rules of Court, rule 4.425 only applies to determinate sentences. (*People v. Murray* (1990) 225 Cal.App.3d 734, 750.) Defendant was sentenced to indeterminate terms of 25 years to life on counts 1, 3, 5, and 6. Thus, the trial court had full discretion to impose consecutive sentences under the indeterminate sentencing law without stating its reasons for doing so. (*Id.* at p. 750; see also *People v. Black* (2005) 35 Cal.4th 1238, 1262, fn. 17 ["No reason need be stated on the record for directing that indeterminate terms run consecutively to one another."], disapproved on other grounds in *Cunningham v. California* (2007) 549 U.S. 270 9166 L.Ed.2d 856].)

Here, while not required to do so, the trial court set forth numerous reasons for imposing consecutive sentences on counts 3, 5, and 6. The trial court stated that it was imposing consecutive sentences because "the crimes and their objectives were predominantly independent of each other and pursuant to California Rule of Court 4.425(b)." It also indicated that it had considered the "aggravated factors under California Rule of Court 4.421 as delineated at page 11 of the probation report," which lists the following circumstances in aggravation under California Rules of Court, rule 4.421: "(a)(8) The manner in which the crimes were carried out indicates planning. [¶] (b)(1) The defendant has engaged in prior violent conduct which indicates a serious danger to society. [¶] (b)(2) The defendant's prior convictions as an adult are numerous. [¶] (b)(3) The defendant has served multiple prior prison terms. [¶] (b)(5) The defendant's prior performance on parole appears to have been unsatisfactory."

13

Moreover, as set forth above, the trial court also was aware of the circumstances of defendant's prior strike convictions as well as his current convictions. On this record, we cannot conclude that the trial court abused its discretion in imposing consecutive sentences on counts 3, 5, and 6.

## III

### Defendant is Not Entitled to Remand for Resentencing

Finally, defendant contends that his "sentences should be vacated and remanded for resentencing with directions to the trial court to sentence him as a 'second striker' under the amended provisions of the three strikes law and Proposition 36." We disagree.

Defendant was sentenced to four consecutive terms of 25 years to life under the three strikes law for crimes that were not serious or violent felonies. (§§ 667.5, subd. (c), 1192.7, subd. (c).) While defendant's appeal was pending, the voters passed Proposition 36 limiting three strikes sentences to current convictions for serious or violent felonies, or a limited number of other felonies not relevant here. (See §§ 1170.12, subd. (c), 667, subd. (c).) If defendant had been sentenced today, he would not be subject to a 25-year-to-life three strikes sentence on counts 1, 3, 5, or 6.

Proposition 36 also added section 1170.126, which creates a postconviction release proceeding "intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) A prisoner is eligible for resentencing under section 1170.126 as a second strike offender if certain requirements are met. (§ 1170.126, subd. (e).)

In asking us to vacate his sentence and remand the matter, defendant relies on the rule of retroactivity set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Under the *Estrada* rule, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the Legislature deeming its former penalty too severe),

14

unless there is a "saving clause" providing for prospective application. (*Id.* at pp. 742, 745, 748.)

In *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), the Fifth Appellate District concluded section 1170.126 is the equivalent of a "saving[s] clause" that defeats the presumption of retroactivity in *Estrada* for persons like defendant whose appeals were pending when Proposition 36 became effective. (*Yearwood,* at pp. 172, 176.) Like *Yearwood*, we conclude *Estrada* does not apply and defendant's only recourse is to petition for a recall of sentence in the trial court pursuant to section 1170.126; he is not entitled to a remand for resentencing under the amendments to sections 667 and 1170.12. (*Yearwood,* at pp. 171-172, 176.) Contrary to defendant's assertion, section 1170.126 is not ambiguous and applies to all prisoners serving indeterminate life sentences imposed under the three strikes law, including those, like defendant, whose judgments are not final and are subject to possible modification on appeal. (*Yearwood,* at p. 177.)

Defendant also contends that retroactive application of Proposition 36 is compelled by equal protection. We reject that contention as well. "Prisoners are not a suspect class. The status of being incarcerated is neither an immutable characteristic nor an invidious basis of classification." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 178.) Laws applicable to prisoners require only a rational basis. (*Ibid*.) To the extent Proposition 36 applies prospectively, prospective application of a statute that lessens punishment does not violate equal protection. (*People v. Floyd* (2003) 31 Cal.4th 179, 188-189; *People v. Lynch* (2012) 209 Cal.App.4th 353, 360-361.)

15

## DISPOSITION

The judgment is affirmed.

                                                            _____BLEASE_____, Acting P. J.

We concur:

          _____DUARTE_____, J.

          _____HOCH_____, J.